**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DEWAYNE MCGEE RICHARDSON,
       *Plaintiff-Appellant,*

       v.

D. L. RUNNELS, Warden; M. D.
MCDONALD, Associate Warden; T.
FELKER, Chief Deputy Warden; R.
K. WONG, Captain; D.
BLANKENSHIP, Captain; D.
PEDDICORD, Lieutenant; M. JOCELYN
LOPEZ WRIGHT, Lieutenant; D. J.
DAVEY, Sergeant; T. POSCH,
Sergeant; M. ROBERTS, Sergeant;
B. HULBERT, Correctional Officer;
and J. SANTANA, Correctional
Officer,
       *Defendants-Appellees,*

       and

WAGNER, Appeals Coordinator; D.
JACKSON, Appeals Coordinator; R.
RATH; J. ARCEO, Captain, Appeals
Examiner; N. GRANNIS, Chief
Inmate Appeals,
       *Defendants.*

No. 07-16736

D.C. No.
CV-04-00393-
MCE/GGH

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, District Judge, Presiding

Argued and Submitted
February 13, 2009—San Francisco, California

1433

Filed January 12, 2010
Amended January 26, 2010

Before: John T. Noonan, Marsha S. Berzon and
N. Randy Smith, Circuit Judges.

Opinion by Judge Noonan

## COUNSEL

Cynthia J. Larsen, Sacramento, California; Tara M. McManigal, Sacramento, California, for the plaintiff-appellant.

John W. Riches, II, Sacramento, California, for the defendants-appellees.

---

## ORDER

The opinion filed on January 12, 2010 is amended as follows. On slip opinion page 924, the following paragraphs are deleted:

>       Richardson focuses on his administrative segregation as a result of his suspected involvement with the Black Guerilla Family. California Code of Regulations Title 15 §§ 3335 and 3336 create a liberty interest in freedom from arbitrary segregation. *Toussaint v. McCarthy*, 801 F.2d 1089, 1097-98 (9th Cir. 1986). To deprive Richardson of his liberty by segregation required an informal hearing in which he was informed of the charge and allowed to present his views. *Id.* at 1100-01. Such a hearing was not held.

>       The defendants respond by arguing as if Richardson alleged that all the lockdowns denied him due process. But that is to exaggerate his claim. The defendants offer no explanation for Richardson's segregation from January 1 to January 16, 2003. But it would be difficult to conclude that this extra deprivation of liberty, arbitrary as it was, "impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). We affirm the judgment on this claim.

The aforementioned paragraphs are replaced by:

>       Richardson focuses on his administrative segregation as a result of his suspected involvement with the

Black Guerilla Family. *Toussaint v. McCarthy*, 801 F.2d 1089, 1097-98 (9th Cir. 1986), held that California Code of Regulations Title 15 §§ 3335 and 3336 create a liberty interest in freedom from arbitrary segregation. *Sandin v. Conner*, 515 U.S. 472 (1995), however, articulated a new requirement for recognizing federal due process liberty interests of inmates subject to administrative segregation. Segregation ordinarily must rise to the level of "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.* at 484.

Richardson alleges that he was administratively segregated from January 1 to January 16, 2003. This deprivation of liberty did not constitute atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin*, 515 U.S. at 475-76 (allowing thirty days of administrative segregation); *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (fourteen days). We affirm the judgment on this claim.

---

## OPINION

NOONAN, Circuit Judge:

DeWayne McGee Richardson appeals the summary judgment entered against him by the district court in his action under 42 U.S.C. § 1983 against the warden and designated officers of High Desert State Prison ("HDSP"). Holding that the defendants offered no evidence to disprove his claim of racial discrimination governing the prison lockdowns to which he was subjected, we reverse the judgment of the district court as to the racially-discriminatory lockdowns.

Richardson's Eighth Amendment claim may also proceed. We affirm the judgment of the district court as to his claim of violation of his right to due process.

FACTS

Richardson, an African-American, is serving a life term in HDSP, a high security California prison, of which the defendants are officials. He was housed in Facility D, which contained high risk prisoners, a number of whom were African-American.

Richardson failed to follow the local rule requiring specific objections in any oppositions to summary judgment. He did file a "Statement of Relevant Facts on Lockdowns." On appeal, he argues that this statement was sufficient substantive compliance by a pro se plaintiff. The defendants stand on the rule. Rather than resolve this dispute, we treat as compendious and convenient the defendants' statement of facts in their brief on this appeal. We quote:

> "On November 30, 2002, a Black inmate committed battery on a correctional officer during the morning yard release on Facility D, Yard 1 (D-1). All Black inmates on this yard were placed on lockdown status, and programming was suspended pending an investigation into this incident. The investigation revealed that the November 30th attack was premeditated and a planned assault.

> "On December 29, 2002, prison officials received information about inmates planning assault against staff at HDSP, and the entire prison was placed on lock-down status pending investigation, searches, and further administrative review. The investigation into this threat indicated that the Black prison gang known as the Black Guerilla Family (BGF) was responsible for planning acts of violence towards staff at HDSP. As a result, approximately 100 inmates determined to be either members, affiliates, associates, suspected gang sympathizers, or otherwise in communication or contact with the BGF and

their respective cell-mates, including Richardson, were placed in administrative segregation pending an investigation in this matter. Shortly thereafter, officials determined that the report relied upon was fabricated by a correctional officer.

"On January 16, 2003, the entire institution, including those Black inmates placed in administrative segregation on November 30, 2002, resumed normal programing.

"On January 18, 2003, a correctional officer was the victim of an assault and an attempted assault by two Black inmates. Due to the seriousness of this incident, all Black inmates on D-1 were placed on lock-down pending an investigation into the incident. On March 5, 2003, the investigation was concluded with the determination that this assault was an isolated incident. Officials instituted an incremental release, and the Black inmate population on D-1 returned to normal program on March 14, 2003.

"On April 8, 2003, a Black inmate committed battery on two correctional officers resulting in serious bodily injury, and another Black inmate was determined to be a suspect in the conspiracy to commit battery on staff. Due to the seriousness of this incident, all Black inmates on D-1 were placed on lockdown pending an investigation into the incident. The investigation revealed that inmates associated with the "Crips" disruptive group were responsible for the batteries, and there was no indication of any tension or threat between the other Black groups on Facility D and staff. [ . . . ] On May 29, 3003, the Black inmate population on D-1 was released from lockdown, with the exception of inmates with a connection to the Crips. On or about August 5, 2003, after

an incremental unlock, the D-1 Crip inmate population was returned to normal programing.

"On June 7, 2003, an incident occurred in the Facility D dining hall involving Southern Hispanic inmates. Numerous inmates from all ethnic groups refused to promptly comply with staff's orders, and a subsequent search of the dining hall revealed seven inmate-manufactured weapons. As a result, all D-1 inmates were placed on lock-down status pending an investigation into the incident. On June 25, 2003, normal programing was resumed, except that the inmates affiliated with the Crips disruptive group, locked-down as a result of the April 8, 2003, incident, remained on lock-down.

"On August 6, 2003, two separate inmate-on-inmate attacks occurred involving the use of inmate-manufactured weapons. One incident involved White inmates and the second incident involved inmates associated with the Crips. All D-1 White inmates and all D-1 Black inmates associated with the Crips, were placed on lock-down status pending an investigation into these two incidents. The investigation of the Crip-affiliated inmate incident indicated that this was an isolated incident between two specific inmates. After signing an unlock agreement representing their desire for positive programing, all Crip-affiliated inmates were returned to normal program on August 19, 2003."

As indicated by the ellipses in the quotation describing the April 8, 2003 incident, a sentence has been omitted from the quoted statement of facts. The omitted sentence reads, "Because Richardson's probation report reflected a Crip membership, he was locked-down whenever the Crip inmate population was locked-down." This sentence is cast in doubt by an Appeal Decision by Chief Deputy Warden Felker

addressed to Richardson, which states: "During an interview with Lt. Rath, it was explained to you that there was no documentation in your central file that reflects any involvement with the disruptive group CRIPS. Your recent lock down was caused by you having a cellmate who is a documented associate of this group. . . . You have since gone to Unit Classification Committee on August 11, 2003, and a complete review of your file was done. There is a probation report that states you are an associate and this will not be removed. There is no corroboration or paperwork that connects you with any prison gang. Per Facility Captain Wong, your CDC § 12 was updated and your gang status of being a CRIP has been deleted."

## PROCEEDINGS

Pro se and in forma pauperis on September 15, 2003, Richardson filed his complaint under 42 U.S.C. § 1983 after exhausting his administrative remedies. In response to his amended complaint of January 31, 2005, the defendants on March 1, 2006 moved for summary judgment. Richardson did not file an opposition. On June 6, 2006, Magistrate Judge Gregory G. Hollows recommended that the motion be granted. Richardson filed objections. On August 25, 2006, the district court vacated the magistrate judge's findings and recommendations and gave Richardson thirty days to file an opposition. He did so on September 21, 2006 but did not obey Eastern District Rule 56-260 requiring a party opposing summary judgment to specify what facts were disputed or admitted. He did file "Plaintiff's Response to Defendants' Motion for Summary Judgment," setting out his version of the facts relating to the lockdowns. The district court then adopted in full the findings and recommendations of Magistrate Judge Hollows.

Richardson, still pro se, appealed. This court appointed pro bono counsel to represent him.

### ANALYSIS

*Race-driven action by State officials.* We do not deal with the unexhausted claims of retaliation. *See* 42 U.S.C. § 1997e(a); *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) (per curiam) (district court must dismiss a case without prejudice "when there is no presuit exhaustion," even when there is exhaustion while the suit is pending). The facts presented by the defendants show that, in several instances, assaults that were believed to be perpetrated or planned by prisoners who were African-American led to the lockdown of all African-American inmates in a particular unit of the prison, among whom was Richardson. The defendants apparently believe that without showing any linkage between the perpetrators and the prisoners subjected to the lockdown, it was enough to assume that race alone tied together the perpetrators and the larger group. An assumption of this kind is grounded on race.

In the course of the oral argument on appeal, this court explored the existence of this assumption with counsel for the defendants. The court repeatedly asked why the prison locked down all the African-Americans in Facility D when only one or two African-Americans were involved in an incident. This colloquy ended with this exchange:

> *The Court*: "Okay, but aren't [prison administrators] required to come forward with some explanations for choosing a group instead of another group? *Some* explanation?"
>
> *Counsel*: "I thought the fact that it was, that when it was, race-based."
>
> [ . . . ]
>
> *The Court*: "[The statements made by the administration say] that we locked down black people because they were black."

*Counsel*: "Yes, because the blacks were the ones who were, who were at risk. These inmates were the ones creating the security risk."

*The Court*: "That, I mean, that is just a flatly racist statement."

*Counsel*: "Of course it is. This was a race-based security decision."

**[1]** In February 2005 the Supreme Court announced a strict-scrutiny standard for racial classifications in prisons, requiring the government to prove that such measures be narrowly tailored to further a compelling governmental interest. *Johnson v. California*, 543 U.S. 499, 505-07 (2005). Defendants argue that at the time of the lockdowns, the reasonableness standard applied. *Johnson v. California*, 321 F.3d 791, 798-99 (9th Cir. 2003). We are now addressing only the constitutional issue as no qualified immunity question is before us, so the Supreme Court's 2005 *Johnson* decision is the relevant precedent. We note that even under the weaker standard, which may govern the qualified immunity question, the assertion that it was sufficient for prison officials simply to believe there to be a link between an individual incident perpetrated by one or two inmates, and the risk of violence from all the African-American prisoners in Facility D, with no evidentiary basis whatever indicated for that belief, falls short.

**[2]** Moving for summary judgment, the defendants had the burden of showing that on undisputed facts, they were entitled to prevail. *See* Fed. R. Civ. P. 56; *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). In this case, under *Johnson*, the defendants had to show that reasonable men and women could not differ regarding the necessity of a racial classification in response to prison disturbances and that the racial classification was the least restrictive alternative (*i.e.*, that any race-based policies are narrowly tailored to legitimate

prison goals). *See Johnson*, 543 U.S. at 505. They have failed to carry this burden on Richardson's equal protection claim, as they have made no evidentiary showing at all concerning the basis for regarding all African-Americans as a security risk when one or a few African-American inmates are responsible for an assault.

*Cruel and unusual punishment by State officials.* Richardson claims deliberate indifference by officials to his need for exercise and therefore a violation of the Eighth Amendment. The test is that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). If the prison allots a standard number of hours per week for exercise, the prison officials are aware that denial of this exercise for a substantial period creates an excessive risk to a prisoner's health. *Allen v. Sakai*, 48 F. 3d 1082, 1088 (9th Cir. 1995).

**[3]** In their brief, the defendants concede that "exercise is one of the basic human necessities protected by the Eighth Amendment." The defendants further concede that the constitutional adequacy of the exercise provided depends upon "the individual facts of each case." The defendants observe that a thirty-day emergency lockdown has been held not to violate the Eighth Amendment. *Hayward v. Procunier*, 629 F.2d 599, 603 (9th Cir. 1980). The cumulative total of the lockdowns here, however, amounts to much more than thirty days. Indisputably, prison officials have, and must have, discretion to deal with disruption and they deserve deference in their exercise of this discretion. *Bell v. Wolfish,* 441 U.S. 520, 547 (1979); *Norwood v. Vance*, 572 F.3d 626, 629-30 (9th Cir. 2009). But the facts justifying the exercise of discretion remain to be established at trial.

In *Norwood*, we considered a similar Eighth Amendment claim and noted the context-sensitive nature of this type of

claim. *Norwood* is not controlling in this appeal because it was decided under the rigorous and defendant-friendly rules of qualified immunity. *See id.* at 633. Here, we do not reach qualified immunity because the issue has never been addressed by the district court. *Schneider v. County of San Diego*, 28 F.3d 89, 93 (9th Cir. 1994) (declining to reach qualified immunity where "[t]he district court granted summary judgment without reaching the immunity issues" because they "should be addressed in the first instance by the district court"). Nonetheless, as in *Norwood*, claims involving a prisoner's right to exercise require a full consideration of context, and thus a fully developed record.

**[4]** *Due process.* Richardson focuses on his administrative segregation as a result of his suspected involvement with the Black Guerilla Family. *Toussaint v. McCarthy*, 801 F.2d 1089, 1097-98 (9th Cir. 1986), held that California Code of Regulations Title 15 §§ 3335 and 3336 create a liberty interest in freedom from arbitrary segregation. *Sandin v. Conner*, 515 U.S. 472 (1995), however, articulated a new requirement for recognizing federal due process liberty interests of inmates subject to administrative segregation. Segregation ordinarily must rise to the level of "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.* at 484.

**[5]** Richardson alleges that he was administratively segregated from January 1 to January 16, 2003. This deprivation of liberty did not constitute atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin*, 515 U.S. at 475-76 (allowing thirty days of administrative segregation); *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (fourteen days). We affirm the judgment on this claim.

The judgment of the district court on Richardson's claim of a violation of due process is AFFIRMED. The district court's judgment on his equal protection and Eighth Amendment claim is REVERSED. The case is REMANDED for trial.

Each party shall bear its own costs on appeal.