(Slip Opinion) OCTOBER TERM, 2011 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## REICHLE ET AL. *v.* HOWARDS

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

No. 11–262.   Argued March 21, 2012—Decided June 4, 2012

Petitioners Reichle and Doyle were members of a Secret Service detail
protecting Vice President Richard Cheney while he greeted members
of the public at a shopping mall.  Agent Doyle overheard respondent
Howards, who was speaking into his cell phone, state that he "was
going to ask [the Vice President] how many kids he's killed today."
Doyle and other agents observed Howards enter the line to meet the
Vice President, tell the Vice President that his "policies in Iraq are
disgusting," and touch the Vice President's shoulder as the Vice Pres-
ident was leaving.  After being briefed by Doyle, Agent Reichle inter-
viewed and then arrested Howards, who was charged with harass-
ment.  After that charge was dismissed, Howards brought an action
against petitioners and others under 42 U. S. C. §1983 and *Bivens* v.
*Six Unknown Fed. Narcotics Agents*, 403 U. S. 388.  Howards claimed
that he was arrested and searched without probable cause, in viola-
tion of the Fourth Amendment, and that the arrest violated the First
Amendment because it was made in retaliation for Howards' criti-
cism of the Vice President.  Petitioners moved for summary judgment
on the ground that they were entitled to qualified immunity, but the
Federal District Court denied the motion.  On appeal, the Tenth Cir-
cuit reversed the immunity ruling with respect to the Fourth
Amendment claim because petitioners had probable cause to arrest
Howards, but the court affirmed with regard to the First Amendment
claim.  In doing so, the court rejected petitioners' argument that, un-
der *Hartman* v. *Moore*, 547 U. S. 250, probable cause to arrest defeats
a First Amendment retaliatory arrest claim.  It concluded instead
that *Hartman* applied only to retaliatory prosecution claims and thus
did not upset prior Tenth Circuit precedent holding that a retaliatory
arrest violates the First Amendment even if supported by probable

cause.

*Held:* Petitioners are entitled to qualified immunity because, at the time of Howards' arrest, it was not clearly established that an arrest supported by probable cause could give rise to a First Amendment violation. Pp. 5−12.

(a) Courts may grant qualified immunity on the ground that a purported right was not "clearly established" by prior case law. *Pearson* v. *Callahan*, 555 U. S. 223, 236. To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft* v. *al-Kidd*, 563 U. S. ___, ___. Pp. 5−6.

(b) The "clearly established" standard is not satisfied here. This Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause; nor was such a right otherwise clearly established at the time of Howards' arrest. P. 6.

(c) At that time, *Hartman*'s impact on the Tenth Circuit's precedent was far from clear. Although *Hartman's* facts involved only a retaliatory prosecution, reasonable law enforcement officers could have questioned whether its rule also applied to arrests. First, *Hartman* was decided against a legal backdrop that treated retaliatory arrest claims and retaliatory prosecution claims similarly. It resolved a Circuit split concerning the impact of probable cause on retaliatory prosecution claims, but some of the conflicting cases involved both retaliatory prosecution and retaliatory arrest claims and made no distinction between the two when considering the relevance of probable cause. Second, a reasonable official could have interpreted *Hartman's* rationale to apply to retaliatory arrests. Like in retaliatory prosecution cases, evidence of the presence or absence of probable cause for the arrest will be available in virtually all retaliatory arrest cases, and the causal link between the defendant's alleged retaliatory animus and the plaintiff's injury may be tenuous. Finally, decisions from other Circuits in the wake of *Hartman* support the conclusion that, for qualified immunity purposes, it was at least arguable at the time of Howards' arrest that *Hartman* extended to retaliatory arrests. Pp. 7−12.

634 F. 3d 1131, reversed and remanded.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, ALITO, and SOTOMAYOR, JJ., joined. GINSBURG, J., filed an opinion concurring in the judgment, in which BREYER, J., joined. KAGAN, J., took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 11–262

VIRGIL D. "GUS" REICHLE, JR., ET AL., PETITIONERS
*v.* STEVEN HOWARDS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE TENTH CIRCUIT

[June 4, 2012]

JUSTICE THOMAS delivered the opinion of the Court.

This case requires us to decide whether two federal law enforcement agents are immune from suit for allegedly arresting a suspect in retaliation for his political speech, when the agents had probable cause to arrest the suspect for committing a federal crime.

I

On June 16, 2006, Vice President Richard Cheney visited a shopping mall in Beaver Creek, Colorado. A Secret Service protective detail accompanied the Vice President. Petitioners Gus Reichle and Dan Doyle were members of that detail.

Respondent Steven Howards was also at the mall. He was engaged in a cell phone conversation when he noticed the Vice President greeting members of the public. Agent Doyle overheard Howards say, during this conversation, "'I'm going to ask [the Vice President] how many kids he's killed today.'" Brief for Petitioners 4. Agent Doyle told two other agents what he had heard, and the three of them began monitoring Howards more closely.

Agent Doyle watched Howards enter the line to meet

the Vice President. When Howards approached the Vice President, he told him that his "'policies in Iraq are disgusting.'" *Ibid.* The Vice President simply thanked Howards and moved along, but Howards touched the Vice President's shoulder as the Vice President departed.[1] Howards then walked away.

Several agents observed Howards' encounter with the Vice President. The agents determined that Agent Reichle, who coordinated the protective intelligence team responsible for interviewing individuals suspected of violating the law, should question Howards. Agent Reichle had not personally heard Howards' comments or seen his contact with the Vice President, but Agent Doyle briefed Agent Reichle on what had happened.

Agent Reichle approached Howards, presented his badge and identified himself, and asked to speak with him. Howards refused and attempted to walk away. At that point, Agent Reichle stepped in front of Howards and asked if he had assaulted the Vice President. Pointing his finger at Agent Reichle, Howards denied assaulting the Vice President and told Agent Reichle, "if you don't want other people sharing their opinions, you should have him [the Vice President] avoid public places." *Howards* v. *McLaughlin,* 634 F. 3d 1131, 1137 (CA10 2011) (internal quotation marks omitted). During this exchange, Agent Reichle also asked Howards whether he had touched the Vice President. Howards falsely denied doing so. After confirming that Agent Doyle had indeed seen Howards touch the Vice President, Reichle arrested Howards.

The Secret Service transferred Howards to the custody of the local sheriff's department. Howards was charged by local officials with harassment in violation of state law.

―――――――
[1] The parties dispute the manner of the touch. Howards described it as an open-handed pat, while several Secret Service agents described it as a forceful push. This dispute does not affect our analysis.

The charge was eventually dismissed.

## II

Howards brought this action in the United States District Court for the District of Colorado under Rev. Stat. §1979, 42 U. S. C. §1983, and *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388 (1971).[2]  Howards alleged that he was arrested and searched without probable cause, in violation of the Fourth Amendment.  Howards also alleged that he was arrested in retaliation for criticizing the Vice President, in violation of the First Amendment.

Petitioners Reichle and Doyle moved for summary judgment on the ground that they were entitled to qualified immunity.  The District Court denied the motion.  See App. to Pet. for Cert. 46–61.  On interlocutory appeal, a divided panel of the United States Court of Appeals for the Tenth Circuit affirmed in part and reversed in part.  634 F. 3d 1131.

The Court of Appeals held that petitioners enjoyed qualified immunity with respect to Howards' Fourth Amendment claim.  The court concluded that petitioners had probable cause to arrest Howards for making a materially false statement to a federal official in violation of 18 U. S. C. §1001 because he falsely denied touching the Vice President.  634 F. 3d, at 1142.  Thus, the court concluded that neither Howards' arrest nor search incident to the arrest violated the Fourth Amendment.[3]  *Id.,* at 1142–1143.

However, the Court of Appeals denied petitioners qualified immunity from Howards' First Amendment claim.

————————

[2] Howards named several Secret Service agents as defendants, but only Agents Reichle and Doyle are petitioners here.  We address only those parts of the lower courts' decisions that involve petitioners Reichle and Doyle.

[3] Howards does not challenge the Court of Appeals' probable-cause determination.

The court first determined that Howards had established a material factual dispute regarding whether petitioners were substantially motivated by Howards' speech when they arrested him. *Id.,* at 1144–1145. The court then rejected petitioners' argument that, under this Court's decision in *Hartman* v. *Moore,* 547 U. S. 250 (2006), probable cause to arrest defeats a First Amendment claim of retaliatory arrest. The court concluded that *Hartman* established such a rule only for retaliatory prosecution claims and, therefore, did not upset prior Tenth Circuit precedent clearly establishing that a retaliatory *arrest* violates the First Amendment even if supported by probable cause. 634 F. 3d*,* at 1148.

Judge Paul Kelly dissented from the court's denial of qualified immunity. He would have held that when Howards was arrested, it was not clearly established that an arrest supported by probable cause could violate the First Amendment. In Judge Kelly's view, *Hartman* called into serious question the Tenth Circuit's prior precedent on retaliatory arrests. 634 F. 3d, at 1151. He noted that other Circuits had applied *Hartman* to retaliatory arrests and that there was a "strong argument" in favor of doing so. 634 F. 3d, at 1151–1152.

We granted certiorari on two questions: whether a First Amendment retaliatory arrest claim may lie despite the presence of probable cause to support the arrest, and whether clearly established law at the time of Howards' arrest so held. See 565 U. S. ___ (2011). If the answer to either question is "no," then the agents are entitled to qualified immunity. We elect to address only the second question. We conclude that, at the time of Howards' arrest, it was not clearly established that an arrest supported by probable cause could violate the First Amendment. We, therefore, reverse the judgment of the Court of Ap-

peals denying petitioners qualified immunity.[4]

## III

Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. See *Ashcroft* v. *al-Kidd,* 563 U. S. \_\_\_, \_\_\_ (2011) (slip op., at 3). In *Pearson* v. *Callahan,* 555 U. S. 223, 236 (2009), we held that courts may grant qualified immunity on the ground that a purported right was not "clearly established" by prior case law, without resolving the often more difficult question whether the purported right exists at all. *Id.,* at 227. This approach comports with our usual reluctance to decide constitutional questions unnecessarily. *Id.,* at 241; see also *Camreta* v. *Greene,* 563 U. S. \_\_\_, \_\_\_ – \_\_\_ (2011) (slip op., at 9–10); *al-Kidd,* 563 U. S., at \_\_\_ (slip op., at 3).

To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Id.,* at \_\_\_ (slip op., at 9) (quoting *Anderson* v. *Creighton,* 483 U. S. 635, 640 (1987)). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." 563 U. S., at \_\_\_ (slip op., at 9). This "clearly established" standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring

_____

[4] This Court has recognized an implied cause of action for damages against federal officials for Fourth Amendment violations. See *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388 (1971). We have never held that *Bivens* extends to First Amendment claims. See *Ashcroft* v. *Iqbal,* 556 U. S. 662, 675 (2009) (assuming without deciding that a First Amendment free exercise claim is actionable under *Bivens*); *Bush* v. *Lucas,* 462 U. S. 367, 368 (1983) (refusing to extend *Bivens* to a First Amendment speech claim involving federal employment). We need not (and do not) decide here whether *Bivens* extends to First Amendment retaliatory arrest claims.

that officials can "'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Anderson, supra,* at 639 (quoting *Davis* v. *Scherer,* 468 U. S. 183, 195 (1984)).

The "clearly established" standard is not satisfied here. This Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause; nor was such a right otherwise clearly established at the time of Howards' arrest.

## A

Howards contends that our cases have "settled" the rule that, "'as a general matter[,] the First Amendment prohibits government officials from subjecting an individual to retaliatory actions'" for his speech. See Brief for Respondent 39 (quoting *Hartman, supra,* at 256). But we have previously explained that the right allegedly violated must be established, "'not as a broad general proposition,'" *Brosseau* v. *Haugen,* 543 U. S. 194, 198 (2004) *(per curiam),* but in a "particularized" sense so that the "contours" of the right are clear to a reasonable official, *Anderson, supra,* at 640. Here, the right in question is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause. This Court has never held that there is such a right.[5]

_____

[5] The Court of Appeals' reliance on *Whren* v. *United States,* 517 U. S. 806 (1996), was misplaced. There, we held that a traffic stop supported by probable cause did not violate the Fourth Amendment regardless of the officer's actual motivations, but we explained that the Equal Protection Clause would prohibit an officer from selectively enforcing the traffic laws based on race. *Id.,* at 813. Citing *Whren,* the Court of Appeals noted that "[i]t is well established that an act which is lawful under the Fourth Amendment may still violate other provisions of the Constitution." *Howards* v. *McLaughlin,* 634 F. 3d 1131, 1149, n. 15 (CA10 2011). But, again, we do not define clearly established law at

## B

We next consider Tenth Circuit precedent. Assuming arguendo that controlling Court of Appeals' authority could be a dispositive source of clearly established law in the circumstances of this case, the Tenth Circuit's cases do not satisfy the "clearly established" standard here.

Relying on *DeLoach* v. *Bevers,* 922 F. 2d 618 (1990), and *Poole* v. *County of Otero,* 271 F. 3d 955 (2001), the Court of Appeals concluded that, at the time of Howards' arrest, its precedent had clearly established the unlawfulness of an arrest in retaliation for the exercise of First Amendment rights, irrespective of probable cause. In *DeLoach*, a case involving both a retaliatory arrest and a retaliatory prosecution, the court held that "[a]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under §1983 even if the act, when taken for a different reason, would have been proper." 922 F. 2d, at 620 (internal quotation marks omitted). In *Poole,* a subsequent retaliatory prosecution case, the court relied on *DeLoach* for the proposition that a plaintiff's illegal conduct is "not relevant to his First Amendment claim." 271 F. 3d, at 961.

The Court of Appeals acknowledged that *Poole* was abrogated by this Court's subsequent decision in *Hartman* v. *Moore*, 547 U. S. 250, which held that a plaintiff cannot state a claim of retaliatory prosecution in violation of the First Amendment if the charges were supported by probable cause. But the Court of Appeals determined that *Hartman*'s no-probable-cause requirement did not extend to claims of retaliatory arrest and therefore did not disturb

_____

such a "high level of generality." *Ashcroft* v. *al-Kidd,* 563 U. S. \_\_\_, \_\_\_ (2011) (slip op., at 10). *Whren*'s discussion of the Fourteenth Amendment does not indicate, much less "clearly establish," that an arrest supported by probable cause could nonetheless violate the First Amendment.

its prior precedent in *DeLoach*. Accordingly, the court concluded, "when Mr. Howards was arrested it was clearly established that an arrest made in retaliation of an individual's First Amendment rights is unlawful, even if the arrest is supported by probable cause." 634 F. 3d, at 1148.

We disagree. At the time of Howards' arrest, *Hartman*'s impact on the Tenth Circuit's precedent governing retaliatory arrests was far from clear. Although the facts of *Hartman* involved only a retaliatory prosecution, reasonable officers could have questioned whether the rule of *Hartman* also applied to arrests.

*Hartman* was decided against a legal backdrop that treated retaliatory arrest and prosecution claims similarly. *Hartman* resolved a split among the Courts of Appeals about the relevance of probable cause in retaliatory prosecution suits, but some of the conflicting court of appeals cases involved both an arrest and a prosecution that were alleged to be retaliation for the exercise of First Amendment rights. See 547 U. S., at 255–256, 259, n. 6 (citing *Mozzochi* v. *Borden,* 959 F. 2d 1174 (CA2 1992); *Singer* v. *Fulton Cty. Sheriff,* 63 F. 3d 110 (CA2 1995); *Keenan* v. *Tejeda,* 290 F. 3d 252 (CA5 2002); *Wood* v. *Kesler,* 323 F. 3d 872 (CA11 2003)). Those cases made no distinction between claims of retaliatory arrest and claims of retaliatory prosecution when considering the relevance of probable cause. See *Mozzochi, supra,* at 1179–1180; *Singer, supra,* at 120; *Keenan, supra,* at 260; *Wood, supra,* at 883. Indeed, the close relationship between retaliatory arrest and prosecution claims is well demonstrated by the Tenth Circuit's own decision in *DeLoach*. *DeLoach*, too, involved allegations of both retaliatory arrest and retaliatory prosecution, and the Tenth Circuit analyzed the two claims as one. 922 F. 2d, at 620–621.

A reasonable official also could have interpreted *Hartman*'s rationale to apply to retaliatory arrests. *Hartman* first observed that, in retaliatory prosecution cases, evi-

dence showing whether there was probable cause for the charges would always be "available and apt to prove or disprove retaliatory causation." 547 U. S., at 261. In this Court's view, the presence of probable cause, while not a "guarantee" that retaliatory motive did not cause the prosecution, still precluded any prima facie inference that retaliatory motive was the but-for cause of the plaintiff's injury. *Id.,* at 265. This was especially true because, as *Hartman* next emphasized, retaliatory prosecution claims involve particularly attenuated causation between the defendant's alleged retaliatory animus and the plaintiff's injury. *Id.*, at 259–261. In a retaliatory prosecution case, the key defendant is typically not the prosecutor who made the charging decision that injured the plaintiff, because prosecutors enjoy absolute immunity for their decisions to prosecute. Rather, the key defendant is the person who allegedly prompted the prosecutor's decision. Thus, the intervening decision of the third-party prosecutor widens the causal gap between the defendant's animus and the plaintiff's injury. *Id.,* at 261–263.

Like retaliatory prosecution cases, evidence of the presence or absence of probable cause for the arrest will be available in virtually every retaliatory arrest case. Such evidence could be thought similarly fatal to a plaintiff's claim that animus caused his arrest, given that retaliatory arrest cases also present a tenuous causal connection between the defendant's alleged animus and the plaintiff's injury. An officer might bear animus toward the content of a suspect's speech. But the officer may decide to arrest the suspect because his speech provides evidence of a crime or suggests a potential threat. See, *e.g., Wayte* v. *United States,* 470 U. S. 598, 612–613 (1985) (noting that letters of protest written to the Selective Service, in which the author expressed disagreement with the draft, "provided strong, perhaps conclusive evidence" of the nonregistrant's intent not to comply—one of the elements of the

offense" of willful failure to register for the draft). Like retaliatory prosecution cases, then, the connection between alleged animus and injury may be weakened in the arrest context by a police officer's wholly legitimate consideration of speech.

To be sure, we do not suggest that *Hartman'*s rule in fact extends to arrests. Nor do we suggest that every aspect of *Hartman'*s rationale could apply to retaliatory arrests. *Hartman* concluded that the causal connection in retaliatory prosecution cases is attenuated because those cases necessarily involve the animus of one person and the injurious action of another, 547 U. S., at 262, but in many retaliatory arrest cases, it is the officer bearing the alleged animus who makes the injurious arrest. Moreover, *Hartman* noted that, in retaliatory prosecution cases, the causal connection between the defendant's animus and the prosecutor's decision is further weakened by the "presumption of regularity accorded to prosecutorial decisionmaking." *Id.,* at 263. That presumption does not apply here. Nonetheless, the fact remains that, for qualified immunity purposes, at the time of Howards' arrest it was at least arguable that *Hartman*'s rule extended to retaliatory arrests.[6]

Decisions from other Federal Courts of Appeals in the wake of *Hartman* support this assessment. Shortly before

———————

[6] Howards argues that petitioners violated his clearly established First Amendment right even if *Hartman'*s rule applies equally to retaliatory arrests. According to Howards, *Hartman* did not hold that a prosecution violates the First Amendment only when it is unsupported by probable cause. Rather, Howards argues, *Hartman* made probable cause relevant only to a plaintiff's ability to recover damages for a First Amendment violation. See Brief for Respondent 37–41. We need not resolve whether *Hartman* is best read as defining the scope of the First Amendment right or as simply establishing a prerequisite for recovery. Nor need we decide whether that distinction matters. It suffices, for qualified immunity purposes, that the answer would not have been clear to a reasonable official when Howards was arrested.

Howards' arrest, the Sixth Circuit held that *Hartman* required a plaintiff alleging a retaliatory arrest to show that the defendant officer lacked probable cause. See *Barnes* v. *Wright,* 449 F. 3d 709, 720 (2006) (reasoning that the *Hartman* "rule sweeps broadly"). That court's treatment of *Hartman* confirms that the inapplicability of *Hartman* to arrests would not have been clear to a reasonable officer when Howards was arrested. Moreover, since Howards' arrest, additional Courts of Appeals have concluded that *Hartman*'s no-probable-cause requirement extends to retaliatory arrests. See, *e.g., McCabe* v. *Parker,* 608 F. 3d 1068, 1075 (CA8 2010); *Phillips* v. *Irvin,* 222 Fed. Appx. 928, 929 (CA11 2007) *(per curiam).* As we have previously observed, "[i]f judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." *Wilson* v. *Layne,* 526 U. S. 603, 618 (1999).[7]

\*　　\*　　\*

*Hartman* injected uncertainty into the law governing retaliatory arrests, particularly in light of *Hartman*'s rationale and the close relationship between retaliatory arrest and prosecution claims. This uncertainty was only confirmed by subsequent appellate decisions that disagreed over whether the reasoning in *Hartman* applied similarly to retaliatory arrests. Accordingly, when Howards was arrested it was not clearly established that an arrest supported by probable cause could give rise to a First Amendment violation. Petitioners Reichle and Doyle are thus entitled to qualified immunity.

The judgment of the Court of Appeals is reversed, and

---

[7] Indeed, the Tenth Circuit itself has applied *Hartman* outside the context of retaliatory prosecution. See *McBeth* v. *Himes,* 598 F. 3d 708, 719 (2010) (requiring the absence of probable cause in the context of a claim alleging that government officials suspended a business license in retaliation for the exercise of First Amendment rights).

the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE KAGAN took no part in the consideration or decision of this case.

# SUPREME COURT OF THE UNITED STATES

No. 11–262

VIRGIL D. "GUS" REICHLE, JR., ET AL., PETITIONERS
*v.* STEVEN HOWARDS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE TENTH CIRCUIT

[June 4, 2012]

JUSTICE GINSBURG, with whom JUSTICE BREYER joins, concurring in the judgment.

Were defendants ordinary law enforcement officers, I would hold that *Hartman* v. *Moore*, 547 U. S. 250 (2006), does not support their entitlement to qualified immunity. *Hartman* involved a charge of retaliatory *prosecution.* As the Court explains, the defendant in such a case cannot be the prosecutor who made the decision to pursue charges. See *ante,* at 9; *Hartman*, 547 U. S., at 262 (noting that prosecutors are "absolutely immune from liability for the decision to prosecute"). Rather, the defendant will be another government official who, motivated by retaliatory animus, convinced the prosecutor to act. See *ibid.*; *ante,* at 9. Thus, the "causal connection [a plaintiff must establish in a retaliatory-prosecution case] is not merely between the retaliatory animus of one person and that person's own injurious action, but between the retaliatory animus of one person and the action of another." *Hartman*, 547 U. S., at 262. This "distinct problem of causation" justified the absence-of-probable-cause requirement we recognized in *Hartman. Id.,* at 263 (Proof of an absence of probable cause to prosecute is needed "to bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action."). See also *id.,* at 259 ("[T]he need to prove a chain of causation from animus to injury, *with*

*details specific to retaliatory-prosecution cases*, . . . provides the strongest justification for the no-probable-cause requirement." (emphasis added)).

A similar causation problem will not arise in the typical retaliatory-arrest case. Unlike prosecutors, arresting officers are not wholly immune from suit. As a result, a plaintiff can sue the arresting officer directly and need only show that the officer (not some other official) acted with a retaliatory motive. Because, in the usual retaliatory-arrest case, there is no gap to bridge between one government official's animus and a second government official's action, *Hartman*'s no-probable-cause requirement is inapplicable.

Nevertheless, I concur in the Court's judgment. Officers assigned to protect public officials must make singularly swift, on the spot, decisions whether the safety of the person they are guarding is in jeopardy. In performing that protective function, they rightly take into account words spoken to, or in the proximity of, the person whose safety is their charge. Whatever the views of Secret Service Agents Reichle and Doyle on the administration's policies in Iraq, they were duty bound to take the content of Howards' statements into account in determining whether he posed an immediate threat to the Vice President's physical security. Retaliatory animus cannot be inferred from the assessment they made in that regard. If rational, that assessment should not expose them to claims for civil damages. Cf. 18 U. S. C. §3056(d) (knowingly and willfully resisting federal law enforcement agent engaged in protective function is punishable by fine (up to $1,000) and imprisonment (up to one year)); §1751(e) (assaulting President or Vice President is a crime punishable by fine and imprisonment up to ten years).