Opinion by Judge TASHIMA; Concurrence by Judge CLIFTON.
OPINION
TASHIMA, Circuit Judge:
Plaintiff-Appellant George Mitchell brought this action against Defendants-Appellees (“Defendants”) for injunctive relief and damages under 42 U.S.C. § 1983, alleging constitutionally inadequate medical care and a violation of the Equal Protection Clause. The district court granted summary judgment in favor of Defendants, and Mitchell timely appealed. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
I.
BACKGROUND
George Mitchell, a fifty-nine year old African-American male, has been civilly committed as a sexually violent predator to the Special Commitment Center (“SCC”) by the State of Washington since June 27, 2003. See In re Det. of Mitchell, 160 Wash.App. 669, 249 P.3d 662 (2011).
On approximately December 14, 2000, prior to his arrival at the SCC, Mitchell was diagnosed with Hepatitis C. From approximately 2003 to 2005, Mitchell met with one of SCC’s consulting physicians, Dr. W. Michael Priebe, of the Tacoma Disease Center. As a consulting specialist, Dr. Priebe was limited to recommending certain courses of treatment, and did not have the authority to order treatment. In mid-2005, Dr. Priebe discussed treatment options with Mitchell. One of the treatment options discussed was the administration of interferon and ribavirin. Because interferon and ribavirin are weight-based medications (meaning dosage depends on the patient’s weight), • Mitchell agreed to postpone this type of treatment until-he could lose weight.
*441 •In May of 2009, Mitchell met-with Dr. Thomas Bell, then the Medical Supervisor of SCO, to discuss his liver biopsy results and review treatment options. During that meeting, based on a belief that his condition was deteriorating, Mitchell requested interferon and ribavirin treatment. Dr. Bell informed Mitchell that the interferon and ribavirin treatment for his genotype had been largely unsuccessful on African-American males. In addition, after reviewing Mitchell’s liver biopsy results, Dr. Bell told Mitchell that his Hepatitis C had not progressed to a level that would justify the harsh side effects of the requested treatment. Based on these factors, Dr. Bell did not recommend Mitchell for interferon ‘and ribavirin treatment. In November of 2012, Mitchell was placed on interferon and ribavirin. The treatment was ultimately unsuccessful.
Mitchell commenced this action’on August 23, 2012, against Defendants Dr. Bell, Kelly Cunningham, Superintendent of SCC, and the State of Washington.[1] Mitchell sued Dr. Bell and Cunningham in their individual and official capacities. Mitchell alleged that Dr. Bell’s refusal to refer him for interferon and ribavirin treatment violated the Fourteenth Amendment for two reasons:[2] (1) the denial of interferon and ribavirin treatment violated his right to reasonable medical care; and (2) the' consideration of race in the denial of treatment violated the Equal Protection Clause.
On referral of this.case for a report and recommendation (“R - & R”), the Magistrate Judge recommended that Defendants’ motion for summary judgment be granted. The Magistrate Judge first ruled that all claims against the State of Washington were -barred by the Eleventh Amendment. Second, she ruled that because Mitchell testified in his deposition that is he suing Cunningham and Dr. Bell in their official capacities, all claims for damages against them are barred by the Eleventh Amendment. The Magistrate Judge then excluded a declaration proffered by Mitchell because it was unsigned and because the declarant lacked sufficient qualifications and personal knowledge. She next ruled that Defendants are entitled to qualified immunity because Mitchell failed to assert a constitutional violation. Specifically, the Magistrate Judge ruled that Mitchell presented no evidence that Dr. Bell’s treatment of Mitchell did not meet the appropriate standard of care for a' medical provider, and that Mitchell’s equal protection claim failed because he had not shown that Defendants acted with the intent or purpose to discriminate.
The District Court adopted the Magistrate Judge’s R & R and entered judgment against Mitchell.
II.
STANDARD OF REVIEW
This Court reviews a district court’s grant of summary judgment de novo. Vasquez v. Cty. of L.A., 349 F.3d 634, 639 (9th Cir.2003). The Court must “determine whether, viewing the evidence in the light most favorable to the nonmov-ing party, there are any genuine issues of material fact and whether the district court correctly. applied the relevant substantive law.” Lopez v. Smith, 203 F.3d *442 1122, 1131 (9th Cir.2000) (en banc) (citing Balint v. Carson City, 180 F.3d 1047, 1050 (9th Cir.1999) (en banc)).
HI.
DISCUSSION
A. Eleventh Amendment Immunity
The Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity. Pena v. Gardner, 976 F.2d 469, 472 (9th Cir.1992) (per curiam). It does not, however, bar claims for damages against state officials in their personal capacities. Id. Moreover, when a plaintiff sues a defendant for damages, there is a presumption that he is seeking damages against the defendant in his personal capacity. Romano v. Bible, 169 F.3d 1182, 1186 (9th Cir.1999).
Mitchell’s First- Amended Complaint clearly states that he is suing Cunningham and Dr. Bell in both their official and personal capacities for damages and injunctive relief. The district court, however, relying on Mitchell’s deposition testimony that he is suing Cunningham and Dr. Bell only in their official capacities, held that all claims for damages against Cunningham and Dr. Bell should be dismissed. But the.record clearly demonstrates that Mitchell, who was acting pro se, did not understand the legal significance between bringing claims against Dr. Bell and Cunningham in their official versus personal capacities. Further, in questioning Mitchell, Defendants’ attorney failed adequately to éxplain the significance of the difference, even after Mitchell signified that he did not understand the legal jargon and would need assistance. As a result, we conclude that Mitchell is not bound by his deposition testimony and Mitchell’s damages claims against Defendants in their individual capacities are not barred by the Eleventh Amendment.[3] To hold otherwise would' “threaten]]:to ensnare parties who may have simply been confused during their deposition testimony and may encourage gamesmanship by opposing attorneys.” Van Asdale v. Int’l Game Tech., 577 F.3d 989, 998 (9th Cir.2009).
B. Mootness
Although not briefed by the parties, before reaching the merits of Mitchell’s claims,, we must consider whether Mitchell’s claims for injunctive and declaratory relief are moot. See Gator.com Corp. v. L.L. Bean, Inc., 398 F.3d 1125, 1128-29 (9th Cir.2005) (stating that because mootness is a jurisdictional issue it should be raised sua sponte). Article III of the Constitution requires that “federal courts confine themselves to deciding actual cases and controversies.” Id. at 1128. “ ‘[I]t is not enough that there may have been a live case or controversy when the case was decided by the court whose judgment we áre reviewing.’ Rather, Article III requires that a live controversy persist throughout all stages of the litigation.” Id. at 1128-29 (quoting Burke v. Barnes, 479 U.S. 361, 363, 107 S.Ct. 734, 93 L.Ed.2d 732 (1987) (citation omitted)).
When a plaintiff no longer wishes to engage in the activity for which he initially sought declaratory or injunctive relief, the requisite case or controversy is absent, id. at 1129. .Several months after Mitchell commenced this action, SCC began treating Mitchell with interferon and ribavirin. The treatment was ineffective. Given the failure of the requested treat *443 ment, Mitchell- no longer has any need for the treatment and there is no reasonable expectation that Mitchell will request the same failed treatment again. .As a -result, we conclude that Mitchell’s claims for in-junctive and- declaratory relief are moot.
C. Damages under 42 U.S.C. § 1983 and Qualified Immunity
Mitchell’s remaining claims are claims for damages under 42 U.S.C. § 1983 against individual Defendants, Dr. Bell- and Cunningham, in. their personal capacities. Government officials enjoy qualified immunity -from civil damages unless their conduct violates “clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Thus, in determining whether qualified immunity applies to Defendants, we must determine whether: (1) the facts adduced constitute the violation of a constitutional right; and (2) the constitutional right was clearly established at the time of the alleged violation. Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).
Mitchell asserts two constitutional violations. First, he contends that Dr. Bell and Cunningham denied him constitutionally adequate medical care in violation of the Fourteenth Amendment. Second, he contends that Dr. Bell and Cunningham violated his right to equal protection under the Fourteenth Amendment by making a medical treatment decision based on race.
1. Constitutionally Adequate Medical Care Under the Fourteenth Amendment
“Involuntarily committed patients in. state mental health hospitals have a Fourteenth Amendment due process right to be provided safe conditions by the hospital administrators____ [W]hether a hospital administrator has violated a patient’s constitutional rights is determined by whether the administrator’s conduct diverges from that of a reasonable professional.” Ammons v. Wash. Dep’t. of Soc. & Health Servs., 648 F.3d 1020, 1027 (9th Cir.2011). In other words, a decision, “if made by a professional, is presumptively valid; liability may be imposed only when the decision- by the professional is such a substantial departure fi-om accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.” Youngberg v. Romeo, 457 U.S. 307, 323, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). This standard has been referred to as the “Youngberg professional judgment standard.” Ammons, 648 F.3d at 1027. The Youngberg standard differs from the “deliberate indifference” standard used in Eighth Amendment cruel and unusual punishment cases, in that “[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.” Id. (quoting Youngberg, 457 U.S. at 321-22, 102 S.Ct. 2452) (internal quotation marks omitted).
Mitchell argues that Dr. Bell’s decision not to administer interferon and ri-bavirin treatment violates the Youngberg professional judgment standard. In support of this argument, Mitchell presents several excerpts from medical texts suggesting that administration of interferon and ribavirin is the preferred treatment course for Hepatitis C. These documents, however, contain guidelines and recommendations, rather than specific standards of. care. None of the documents submitted by Mitchell suggests that Dr. Bell’s treatment decision, based on the individualized *444 circumstances of Mitchell’s health, was unreasonable. Furthermore, the fact that Dr, Priebe suggested, in 2005, that future interferon and ribavirin treatment may be appropriate is not sufficient to demonstrate that Dr..Bell’s decision concluding otherwise in 2009 was unreasonable. As a result, we conclude that Mitchell has failed to present evidence sufficient to rebut the Youngberg professional judgment- standard. Consequently, we affirm the district court’s grant of . summary judgment in favor of Defendants on this claim.
2. -Equal Protection
“[A]ny official- action that treats a person differently on account of his race or ethnic origin is inherently suspect.” Fisher v. Univ. of Tex., — U.S. -, 133 S.Ct. 2411, 2419, 186 L.Ed.2d 474 (2013) (quoting Fullilove v. Klutznick, 448 U.S. 448, 523, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980) (Stewart, J., dissenting) (internal quotation marks omitted)). Consequently, the general rule is that when a state actor explicitly treats an individual differently on the basis of race, strict scrutiny is applied. Id.; Johnson v. California, 543 U.S. 499, 505, 125 S.Ct. 1141, 160 L.Ed.2d 949 (2005); Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 227, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995). Under strict scrutiny, all racial classifications imposed by the government must be “narrowly tailored to further compelling government interests” Fisher, 133 S.Ct. at 2419 (quoting Grutter v. Bollinger, 539 U.S. 306, 326, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003) (internal quotation marks omitted)).
The Supreme Court has never considered whether strict scrutiny applies to the use of race by a state actor in making-a medical treatment decision.[4] Nor have we. First, we note that the Supreme Court has “insisted on strict scrutiny in every context, even for so-called ‘benign racial classifications, such as race-conscious university admissions policies, race-based preferences in government contracts, and race-based districting intended to improve minority representation.” Johnson, 543 U.S. at 505, 125 S.Ct. 1141 (citations omitted). The question is whether these reasons for applying strict scrutiny should be applied in the medical context. We conclude that they should because even medical and scientific decisions are not immune from invidious and illegitimate race-based motivations and purposes. Indeed, the. lens under which we examine the constitutionality of race-based medical and scientific decisions becomes especially critical in light of documented instances in which the federal government has pursued reprehensible race-based actions in the name of science and medicine. See, e.g., U.S. Public Health Service Syphilis Study at Tuskegee,- Centers For Disease- Control and Prevention, www.cdc.gov/tuskegee/index.html (last visited July 22, 2015) (describing the government’s role in the Tuskegee syphilis study withholding adequate treatment from poor black men); Secret World War II Chemical Experiments Tested Troops Based on Race,. NPR, www.npr.org/2015/06/22/ 415194765/u-s-troops-tested-by-race-in-secret-world-war-ii-chemical-experiments (last visited July 22,. 2015) (describing government funded program studying the effects of mustard gas and other chemical agents on African-American, and Puerto Rican soldiers during World War II).
*445 We also recognize that there are likely numerous instances where the use of race as a factor in a medical decision is benign and may even be ‘beneficial. However, “there is simply no way of determining what classifications are ‘benign’ or ‘remedial’ and what classifications are in fact motivated by illegitimate notions of racial inferiority or simple racial politics.” Shaw v. Reno, 509 U.S. 630, 642-43, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993) (quoting Richmond v. J.A. Croson Co., 488 U.S. 469, 493, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989) (internal quotation marks omitted)). Indeed, “[t]he point of carefully examining the interest asserted by the government in support of a racial classification, and the evidence offered to show that the classification is needed, is precisely to distinguish legitimate from illegitimate- uses of race[5] in governmental decisionmaking.” Adarand, 515 U.S. at 228, 115 S.Ct. 2097. As a result, courts apply strict scrutiny “in order to ‘smoke out’ illegitimate uses of race by assuring that [government] is pursuing a goal important enough to warrant [such] a highly suspect tool.” Johnson, 543 U.S. at 506, 125 S.Ct. 1141 (quoting J.A. Croson Co., 488 U.S. at 493, 109 S.Ct. 706).
Turning to the facts of this case, we conclude that Mitchell has set forth specific facts plausibly suggesting that Dr. Bell[5] employed an explicit racial classification sufficient to trigger strict scrutiny. Mitchell states that when he requested interferon and ribavirin treatment from Dr. Bell he was told that treatment did not work on African Americans. Dr. Szei-bert’s declaration corroborates this allegation, stating that “Dr. Bell rejected Mitchell’s request [for interferon and ribavirin .treatment], explaining to Mr. Mitchell that interferon & ribavirin treatments for plaintiffs Hepatitis C genotype .had been largely unsuccessful on African American males..: .’’-Indeed, on appeal, Defendants concede that race was a factor in Dr. Bell’s decision to deny Mitchell’s medication request. Accepting these facts as true, as we must on summary judgment, under strict scrutiny,- Mitchell has adduced sufficient facts to establish that Dr. Bell employed a racial-classification when he determined not to recommend Mitchell for interferon and ribavirin treatment.
Defendants suggest that strict scrutiny should not apply for two reasons: (1) Dr. Bell’s consideration of. the race-related success rate of interferon and ri-bavirin treatment “is not synonymous with a distinction based solely on race,” because there may be a different genotype of the disease that would be responsive to treatment in the African-American male population; (2) race-related success of the treatment .was not the only factor considered by Dr. Bell, and thus was not necessarily determinative of the treatment decision. Under strict scrutiny, these arguments are unavailing. First, the fact that race is a factor in a government decision is sufficient to trigger strict scrutiny. See Fisher, 133 S.Ct. at 2419. As a result, the hypothetical presented by Defendants suggesting that if Mitchell had a different genotype of Hepatitis C, race may not have factored into the decision, is irrelevant. Second, because Mitchell has shown that Dr. Bell explicitly factored Mitchell’s race into his treatment decision, it was not necessary to show that “but for” Dr. Bell’s consideration of race, the decision to.withhold .the requested drugs would have occurred. “When the govern *446 ment expressly classifies persons on the bases of race or national origin .... its action is ‘immediately suspect’ — A plaintiff in such a lawsuit need not make an extrinsic showing of discriminatory animus or a discriminatory effect to trigger strict scrutiny.” Jana-Rock Constr., Inc. v. N.Y. State Dep’t of Econ. Dev., 438 F.3d 195, 204-05 (2d Cir.2006); see also Walker v. Gomez, 370 F.3d 969, 974 (9th Cir.2004) (stating that the plaintiff was not required to show discriminatory intent because the state admitted it considered race when it assigned inmates to a cell).
Because we hold that strict scrutiny applies, Dr. Bell is required to demonstrate that the use of race in his medical decision was narrowly tailored to achieve a compelling government interest. Adarand, 515 U.S. at 227, 115 S.Ct. 2097. It is not difficult to imagine the existence of a compelling justification in the context of medical treatment. See Erik Lillquist & Charles A. Sullivan, The Law and Genetics of Racial Profiling in Medicine, 39 Harv. C.R.-C.L.L. Rev. 391, 445 (2004) (suggesting that sufficient empirical data to treat African-Americans differently than whites may constitute a compelling government interest); Scarlett S. Lin & Jennifer L. Kelsey, Use of Race and Ethnicity in Epidemiologic Research: Concepts, Methodological Issues, and Suggestions for Research, 22 Epibemiologic Rev. 187, 187 (2000) (emphasizing the importance of the use of race and ethnicity in medical research). Because, however, Dr. Bell failed to offer any compelling justification for the racial classification, let alone a justification that was narrowly tailored; instead, arguing only that Mitchell’s equal protection claim fails because race was not the “primary” consideration in denying treatment, Dr. Bell failed to meet his burden under the strict scrutiny standard. Thus, the district court erred in concluding that no constitutional violation occurred. See Guru Nanak Sikh Soc’y of Yuba City v. Cnty. of Sutter, 456 F.3d 978, 981 (9th Cir.2006); Krislov v. Rednour, 226 F.3d 851, 866 n. 7 (7th Cir.2000).[6]
3. Qualified Immunity — Clearly Established
Despite the fact that we hold that the violation of a constitutional right occurred, Dr. Bell is entitled to qualified immunity if it was not “clearly established” that his actions would violate Mitchell’s constitutional rights.[7] Pearson, 555 U.S. at 232, 129 S.Ct. 808. At the time of Dr. Bell’s actions, it was clear that the Fourteenth Amendment requires all racial clas *447 sifications to survive strict scrutiny. Smith v. Univ. of Wash., Law School, 233 F.3d 1188, 1196-97 (9th Cir.2000); Rudebusch v. Hughes, 313 F.3d 506, 518 (9th Cir.2002). Furthermore, the right of a ward of the state to be free from racial discrimination was clearly established. Johnson, 543 U.S. at 512, 125 S.Ct. 1141.
However, “[i]t is insufficient that the broad principle underlying a right is well-established.” Walker, 370 F.3d at 978. “The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.” Id. (quoting Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (internal quotation marks omitted)). “To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right.” Taylor v. Barkes, — U.S. -, 135 S.Ct. 2042, 2044, 192 L.Ed.2d 78 (2015) (quoting Reichle v. Howards, — U.S. -, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (internal quotation marks omitted)); see also Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (“The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates,that right”). Mitchell “has not brought to our attention, and our independent research does not reveal, case law involving the particular circumstances presented by this case.” Walker, 370 F.3d at 977-78. Here, the “particular circumstances” are the use of race-related success-of-treatment data as a factor in making a medical treatment decision. As a result, it was not clearly established that a reasonable official would understand that the use of race-related success-of-treatment data as a factor in a medical treatment decision would be unconstitutional. Dr. Bell is therefore entitled to qualified immunity.
IV.
CONCLUSION
For the reasons set forth above, the district court’s grant of summary judgment in favor of Defendants is AFFIRMED.

. Mitchell also sued Randall Griffith, Paul Temposky, and Christine Haueter. These individuals are no longer defendants in this action.

. Mitchell also alleged that the decision not to authorize his requested Hepatitis C diet violated-the Fourteenth Amendment. The district court granted summary judgment in fa- ■ vor of Defendapts on this claint and Mitchell ■ has not appealed this issue.

. Mitchell does not contest the district court's holding that all claims against the State of Washington are barred by the Eleventh Amendment,

. Although the Supreme Court has never directly addressed this issue, members of the Court have in the past indicated that they believe strict scrutiny should apply to race-targeted medical outreach programs. See Bush v. Vera, 517 U.S. 952, 984, 116 S.Ct. 1941, 135 L.Ed.2d 248 (1996).

. Because Mitchell has alleged no facts suggesting that Cunningham knew of the -potential equal protection violations, we affirm the grant of summary judgment for this claim as - to Cunningham, As a result, the remainder of our analysis focuses solely on the claim against Dr. Bell.

. The concurring opinion agrees that strict scrutiny should be applied, Concur, Qp. at 450, but argues that this standard was met because "Dr. Bell successfully articulated a compelling State interest in the health of his patient when he explained that he refused to prescribe treatment because he thought it would do more harm than good.” Id. at 451. While this may be sufficient as a Hippocratic oath-like aspirationai goal, it simply does not pass muster as a sufficiently particularized showing under the strict scrutiny standard.

. The concurring opinion notes that, under Pearson, "we are not required to consider the question of” a constitutional violation. Concur. Op. at 448. But Pearson clearly authorized us to address either inquiry first.’ See Pearson, 555 U.S. at 236, 129 S.Ct. 808 ("[W]e conclude that, while the sequence set forth [in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.”). We first address the constitutional violation question for clarity, particularly because the district court addressed it and held that there was no constitutional violation.