Dissent by Judge BYBEE.
OPINION
SILVERMAN, Circuit Judge:
Plaintiff John Colwell, an inmate in the Nevada Department of Corrections, is blind in one eye due to a cataract. It is undisputed that his treating doctors recommended cataract surgery and that the surgery would restore his vision. However, the surgery was denied by NDOC supervisory medical personnel because of the NDOC’s “one eye policy” — cataract surgery is refused if an inmate can manage to function in prison with one eye.
We hold today, as numerous other courts considering the question have, that blindness in one eye caused by a cataract is a serious medical condition. We also hold that the blanket, categorical denial of medically indicated surgery solely on the basis of an administrative policy that “one eye is good enough for prison inmates” is the paradigm of deliberate indifference. We reverse the grant of summary judgment in favor of the prison officials and remand for trial.
BACKGROUND
Because this case was resolved at summary judgment, we present the facts in the light most favorable to Colwell, the non-moving party. See Snow v. McDaniel, 681 F.3d 978, 982 (9th Cir.2012), overruled in part on other grounds by Peralta v. Dillard, 744 F.3d 1076 (9th Cir.2014) (en banc).
Colwell is a 67-year-old man serving multiple criminal sentences, including life without the possibility of parole. He did not have eye problems when he was incarcerated in 1991, but he subsequently developed cataracts in both eyes and underwent cataract-removal surgery on his left eye in 2001. By October 2001, a cataract had developed in Colwell’s right eye that rendered him totally blind in that eye by 2002. That cataract has never been treated and is the medical condition at issue in this case.
According to R. Bruce Bannister, D.O., the NDOC Medical Director, a cataract is “cloudiness (opacity) of the lens of the eye” which “does no damage to the eye and can be removed at any time.” Dr. Bannister, who is not an optometrist or ophthalmologist, declared that a cataract does not cause pain, require urgent attention, or lead to permanent vision loss. He declared further that a delay in removing a cataract causes no harm. The NDOC has a formal written policy for cataract treatment, Medical Directive 106, which states in part:
PURPOSE:
It is the policy of the Department that inmates with cataracts will be evaluated *1064 on a case by case basis, taking into consideration their ability to function within their current living environment.
PROCEDURES:
106.01 Surgical Removal of Cataracts
1. Patients with visual impairment incompatible with the ability to perform the required tasks of daily living in their current living environment may be considered for removal of a cataract.
2. All cataracts extraction requests must be approved by the Utilization Review Panel and the Medical Director.
At least three medical providers — Drs. Snider, Fischer (ophthalmologist), and Fisher (optometrist) — recommended that Colwell’s right-eye cataract be treated. Colwell first informed the NDOC of blindness in his right eye during an October 2001 physical with prison physician Dr. Snider. In July 2002, Dr. Snider noted the presence of the cataract and that Col-well “need[ed] two functioning eyes” because he worked sewing mattresses.[1] Dr. Snider referred Colwell to Michael J. Fischer, M.D., an outside ophthalmologist. Dr. Fischer examined Colwell in September 2002, observed that Colwell’s “visual acuity was correctable to 20/20 in the left eye,” found “a mature cataract in the right eye,” and concluded that right-eye cataract surgery was indicated. Based on Dr. Fischer’s recommendation, Dr. Snider submitted three requests for surgery to the Utilization Review Panel.[2] The Panel denied Dr. Snider’s requests, first indicating that Colwell was on a waiting list but then denying the two subsequent requests without explanation. Colwell filed several written grievances between October and December 2003, complaining that although Dr. Fischer had recommended surgery, Dr. Snider told him that the “department policy is ‘one eye only’ is needed” and the surgery would not be approved. All of Colwell’s grievances were denied.
Colwell refused his annual physical every year from 2004 to 2008 and did not receive further vision care until September 2009, when he requested a cataract consultation. A prison optometrist, a different Dr. Fisher, examined Colwell and noted that he was “having trouble working” and that his right eye was “eligible for cataract surgery.” Following up on Dr. Fisher’s findings, Dr. John Scott, an NDOC senior physician, requested an ophthalmology consultation. The consultation report indicates that Colwell’s condition was not life-threatening but did “significantly affect” his quality of life.
The next week, however, Dr. Scott discontinued the request. His handwritten notes state:
I had originally submitted request for consult on 10-6-09 based purely on optometrists [sic] opinion. But pt has 20/20 vision OS [left eye]. So can actually qualify to drive a car in many states of ... U.S. As well this issue has no implications of damage to [right] eye if cataract goes unrepaired. Therefore] on further reflection I am [discontinuing] the original request for ophthalogic consultation.
*1065 There is no indication Colwell was informed of the discontinuation, and he filed at least one written request inquiring about the status of the referral. He also spoke with Dr. Gedney, another prison physician, about the issue during an appointment on February 18, 2010. Dr. Ged-ne/s notes reflect that Colwell did not meet the criteria for surgery because he has sight out of his left eye, and she told Colwell that he did not qualify for cataract removal due to a “one eye only” policy.
Colwell again filed a series of grievances. He complained that the optometrist who had examined him recommended a cataract consult for possible surgery, but that Dr. Scott had discontinued the consult because he has one “good” eye. His informal grievance was denied with the following response:
Administrative Regulation 618 defines your request for cataract surgery as cosmetic/elective surgery. One is corrected to 20/20 vision now. This places this, the 2nd cataract surgery[] in a nonessential category, despite recommendation from Dr[.]Fisher [the prison optometrist]. I cannot predict when this may be considered for repair, but at this time, it is not considered for repair by Utilization Review.
(Emphasis added.) Colwell’s first-level grievance was denied for the same reason. Dr. Bannister personally denied his second-level grievance on March 9, 2010, stating:
I have reviewed your written grievance and the answers provided at the informal and first level. I agree with these responses. In almost cases [sic] cataract surgery is not an emergency. You should be evaluated periodically to determine the degree of impairment caused by your cataract with regard to your ability to perform the activities required in your current living situation. Based on the practitioner[’]s evaluation the request can be re-considered.
Colwell filed this lawsuit under 42 U.S.C. § 1983 alleging a violation of his Eighth Amendment rights. Specifically, he claims that the prison officials were deliberately indifferent to his serious medical needs in refusing him surgery to restore his vision. On the defendants’ motion for summary judgment, the district court ruled, first, that Colwell’s cataract-induced' blindness was a serious medical need. However, it also held that Colwell failed to establish that the defendants were deliberately indifferent to that need. It reasoned that Colwell had not shown that the Utilization Review Panel’s denial or delay in approving surgery led to further injury to his eye, and explained that “medical providers have determined that surgery is not medically warranted in light of Plaintiffs overall visual acuity and ability to adequately function.” The court also held that the Panel’s decision to refuse surgery amounted to a difference of opinion over the best course of treatment, and that Colwell had not shown that the NDOC’s course of action was “medically unacceptable” or “made in conscious disregard of an excessive risk to his health.”
DISCUSSION
1. Legal Standards
We have jurisdiction pursuant to 28 U.S.C. § 1291, and review de novo the district court’s grant of summary judgment. Toguchi v. Chung, 391 F.3d 1051, 1056 (9th Cir.2004). “We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.” Prison Legal News v. Lehman, 397 F.3d 692, 698 (9th Cir.2005).
*1066 The government has an “obligation to provide medical care for those whom it is punishing by incarceration,” and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983. Estelle v. Gamble, 429 U.S. 97, 103-05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show “deliberate indifference” to his “serious medical needs.” Id. at 104, 97 S.Ct. 285. This includes “both an objective standard — that the deprivation was serious enough to constitute cruel and unusual punishment — and a subjective standard— deliberate indifference.” Snow, 681 F.3d at 985.
To meet the objective element of the standard, a plaintiff must demonstrate the existence of a serious medical need. Estelle, 429 U.S. at 104, 97 S.Ct. 285. Such a need exists if failure to treat the injury or condition “could result in further significant injury” or cause “the unnecessary and wanton infliction of pain.” Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.2006) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992), overruled in part on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir.1997) (en bane)) (internal quotation marks omitted). Indications that a plaintiff has a serious medical need include “[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual’s daily activities; or the existence of chronic and substantial pain.” McGuckin, 974 F.2d at 1059-60.
A prison official is deliberately indifferent under the subjective element of the test only if the official “knows of and disregards an excessive risk to inmate health and safety.” Toguchi, 391 F.3d at 1057 (quoting Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1187 (9th Cir.2002)) (internal quotation mark omitted). This “requires more than ordinary lack of due care.” Farmer v. Brennan, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)) (internal quotation mark omitted). “[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.” Id. at 837, 114 S.Ct. 1970. Deliberate indifference “may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.” Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir.1988). “In deciding whether there has been deliberate indifference to an inmate’s serious medical needs, we need not defer to the judgment of prison doctors or administrators.” Hunt v. Dental Dep’t, 865 F.2d 198, 200 (9th Cir.1989).
2. Serious Medical Need
We agree with the district court that monocular blindness is a serious medical need. Although blindness in one eye is not life-threatening, it is no trifling matter either. It is not a bump or scrape or tummy ache. Monocular blindness is the loss of the function of an organ. Other courts have held that similar and even less severe losses of vision are serious medical needs. For example, in Koehl v. Dal-sheim, the Second Circuit held that an inmate who needed eyeglasses for double vision and loss of depth perception had a serious medical need. 85 F.3d 86, 88 (2d Cir.1996). Although the inmate’s condition did not “inevitably entail pain,” he alleged he suffered injuries caused by falling or walking into objects. Id. The court ruled *1067 these consequences “adequately meet the test of ‘suffering’ ” the Supreme Court “recognized is inconsistent with ‘contemporary standards of decency.’ ” Id. (quoting Estelle, 429 U.S. at 103, 97 S.Ct. 285).[3]
Nevada district courts addressing claims similar to Colwell’s have found cataracts to be serious medical needs. The district court in White v. Snider concluded that a cataract causing complete blindness in one eye was a serious medical need where doctors recommended cataract removal and the plaintiff experienced headaches and had difficulty seeing in the prison yard. No. 3:08-CV-252-RCJ(VPC), 2010 WL 331742, at *5 (D.Nev. Jan. 26, 2010). The court in Michaud v. Bannister likewise held that a plaintiffs “advanced cataract” was “squarely within the ambit of ‘serious medical needs’” where the plaintiff testified that “he had lost almost all of his ability to see in his right eye,” and “blindness and irreparable injury could result from his untreated cataract.” No. 2:08-cv-01371-MMD-PAL, 2012 WL 6720602, at *5 (D.Nev. Dec. 26, 2012). Most recently, the court in Layton v. Bannister held that a right-eye cataract was a serious medical need despite the plaintiffs high visual acuity in his left eye, because his affected eye was blind and the condition was significant enough that an examining optometry consultant referred him to the Utilization Review Panel for surgery. No. 3:10-CV-00443-LRH-WGC, 2012 WL 6969758, at *6 (D.Nev. Sept. 28, 2012), report and recommendation adopted, No. 3:10-CV-00443-LRH, 2013 WL 420427 (D.Nev. Jan. 31, 2013).
Like the medical conditions in White, Michaud, and Layton, Colwell’s cataract is severe. “[I]t is clear that this is not a situation of a minor cataract with little impact on an inmate’s vision.” Michaud, 2012 WL 6720602, at *5. Colwell’s right eye has been blind for more than a decade, and his condition affects his perception and renders him unable to see if he turns to the left. Several doctors, including an ophthalmologist and an optometrist, have found the cataract and resulting vision loss “important and worthy of comment or treatment.” McGuckin, 974 F.2d at 1059.
Furthermore, the evidence showed that Colwell was not “merely blind” in one eye, but that his monocular blindness caused him physical injury: He ran his hand through a sewing machine on two occasions while working in the prison mattress factory; he ran into a concrete block, splitting open his forehead; he regularly hits his head on the upper bunk of his cell; and he bumps into other inmates who are not good-natured about such encounters, triggering fights on two occasions.
*1068 To reiterate, we agree with the district court that Colwell’s total blindness in one eye is a serious medical need.
3. Deliberate Indifference
We now turn to the second prong of the inquiry, whether the defendants were deliberately indifferent. This is not a case in which there is a difference of medical opinion about which treatment is best for a particular patient. Nor is this a case of ordinary medical mistake or negligence. Rather, the evidence is undisputed that Colwell was denied treatment for his monocular blindness solely because of an administrative policy, even in the face of medical recommendations to the contrary. A reasonable jury could find that Colwell was denied surgery, not because it wasn’t medically indicated, not because his condition was misdiagnosed, not because the surgery wouldn’t have helped him, but because the policy of the NDOC is to require an inmate to endure reversible blindness in one eye if he can still see out of the other. This is the very definition of deliberate indifference.
The district court held that Colwell did not show the NDOC’s decision to delay or deny treatment caused him harm. This ignores the plain fact that as long as the eye remains untreated, Colwell continues to suffer blindness in his right eye, which is harm in and of itself, along with all of the other harms and dangers that flow from that. The record is sufficient to create a triable issue of fact regarding whether Colwell has been harmed by the refusal of treatment. See Michaud, 2012 WL 6720602, at *8-9 (plaintiff showed harm from delay of cataract surgery where his impairment resulted in fights with other inmates, causing “missing teeth and black eyes”). Contra Layton, 2012 WL 6969758, at *9 (disregarding collateral injury and holding that the visual acuity in plaintiffs good eye was the best measure of further injury since his cataract-affected eye was already totally blind).
In the district court’s view, this is case about a difference of opinion over whether treatment is medically warranted. We disagree. “A difference of opinion between a physician and the prisoner — or between medical professionals— concerning what medical care is appropriate does not amount to deliberate indifference.” Snow, 681 F.3d at 987. Rather, “[t]o show deliberate indifference, the plaintiff ‘must show that the course of treatment the doctors chose was medically unacceptable under the circumstances’ and that the defendants ‘chose this course in conscious disregard of an excessive risk to plaintiffs health.’ ” Id. at 988 (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996)).
In Snow v. McDaniel, which was decided shortly after the district court issued its decision in this case, an NDOC death row inmate brought an Eighth Amendment claim after the Utilization Review Panel repeatedly refused to authorize hip replacement surgery recommended by outside specialists and a treating physician. 681 F.3d at 983-84. The Panel denied surgery for approximately two years, concluding that the condition could be treated with pain medication even though it was an “emergency” and “potentially life threatening.” Id. The Snow court held that “the circumstances ... raise[d] an inference that the defendants were unreasonably relying on their own non-specialized conclusions” instead of the recommendations of the plaintiffs treating specialists. Id. at 986. Therefore, “a reasonable jury could conclude that the decision of the non-treating, non-specialist physicians to repeatedly deny the recommendations for surgery was medically unacceptable under all of the circumstances.” Id. at 988; see also *1069 Hamilton v. Endell, 981 F.2d 1062, 1067 (9th Cir.1992) (“By choosing to rely upon a medical opinion which a reasonable person would likely determine to be inferior, the prison officials took actions which may have amounted to the denial of medical treatment, and the ‘unnecessary and wanton infliction of pain.’ ”), overruled in part on other grounds as recognized in Snow, 681 F.3d at 986.
The record in this case indicates that the NDOC similarly ignored the recommendations of treating specialists and instead relied on the opinions of non-specialist and non-treating medical officials who made decisions based on an administrative policy. Colwell was seen by eye specialists on at least two occasions, first by ophthalmologist Dr. Fischer in 2002 and then by a prison optometrist in 2009. Both specialists recommended cataract surgery after personally examining the cataract, yet the NDOC disregarded these recommendations.
The record supports a conclusion that the specialists’ recommendations for surgery were overridden not because of conflicting medical opinions about the proper course of treatment, but because officials enforced the “one eye only” policy. The NDOC’s formal cataract-treatment policy, Medical Directive 106, mandates “case by case” consideration of cataract treatment requests taking into account an inmate’s “ability to function,” but the evidence here shows that the NDOC denies cataract surgery as long as a prisoner has one “good” eye. Colwell was told on multiple occasions that he would not receive treatment because he had a healthy left eye, which made surgery unnecessary despite the examining specialists’ opinions.
Facing similar facts, Nevada district courts have refused to grant summary judgment in favor of prison officials. In Michaud, the district court held that there was a genuine issue of fact whether the Utilization Review Panel was deliberately indifferent when it knew that the prisoner faced permanent blindness but denied the recommendation for cataract surgery and instead ordered an eye patch and headache pills. 2012 WL 6720602, at *7. The court explained that the facts indicated that every physician who reviewed the inmate’s vision concluded surgery was necessary, and that “the only difference of opinion existed between these physicians and the URP.” Id. at *8.
Similarly, the White court held that there were triable issues of fact where there was a difference of opinion between “the optometric specialists at the eye clinic who recommended cataract removal and the defendants who claim the procedure is not necessary.” 2010 WL 331742, at *5. The court reasoned that “a factual issue remain[ed] as to whether defendants surrendered professional judgment and dismissed complaints based on the mere categorization of cataract removal as ‘not medically necessary.’ ” Id. at *6.[4]
The defendants ask us to disregard these cases and instead rely on Cobbs, an unpublished Sixth Circuit decision in which the court held that the Michigan Department of Correction’s Chief Medical Officer *1070 was not deliberately indifferent when his Medical Committee denied a request for cataract surgery and refused a subsequent request for an ophthalmology consultation, despite specialist recommendations. 475 Fed.Appx. at 581-84. Our case is distinguishable from this nonprecedential, 2-to-1 Sixth Circuit case in at least one very important respect. Cobbs actually received the cataract surgery he needed after he filed his lawsuit. Id. at 579. He continued his suit afterward to recover damages for the delay in treatment. Id. at 576. Colwell, on the other hand, has been and continues to be denied the surgery that three different doctors say he currently needs. In any event, to whatever extent Cobbs can be read to condone the refusal to treat treatable cataracts solely because the inmate can still see out of one eye, we reject that view, as did Sixth Circuit Judge Cole. Id. at 584-85 (Cole, J., dissenting).
A reasonable jury could find that NDOC officials denied treatment because Col-well’s medical need conflicted with a prison policy, not because non-treatment was a medically acceptable option. See Hamilton, 981 F.2d at 1066 (holding that summary judgment was inappropriate “where prison officials and doctors deliberately ignored the express orders of a prisoner’s prior physician for reasons unrelated to the medical needs of the prisoner”).
4. Personal Participation
The defendants urge us to uphold summary judgment because, they argue, neither Dr. Bannister nor former and now-retired NDOC Director Howard Skolnik was personally involved in any constitutional deprivation. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir.2002) (“In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation.... ”). The defendants never argued before the district court that Dr. Bannister lacked personal involvement, and the district court did not reach their arguments concerning Director Skolnik.
Although many of the events in this case occurred before Dr. Bannister became NDOC Medical Director in 2005, he personally denied Colwell’s second-level grievance even though he was aware that an optometrist had recommended surgery and that Colwell’s lower-level grievances had been denied despite that recommendation. Accordingly, a reasonable jury could find that Dr. Bannister, pursuant to a policy rather than a considered medical judgment, contributed to the decision to refuse treatment in conscious disregard of an excessive risk to Colwell’s health. See Snow, 681 F.3d at 989-90.
There are no facts indicating Director Skolnik was personally involved in Colwell’s medical care, but the current NDOC Director is still a proper defendant in Colwell’s claim for injunctive relief “because he would be responsible for ensuring that injunctive relief was carried out, even if he was not personally involved in the decision giving rise to [the plaintiffs] claims.” Pouncil v. Tilton, 704 F.3d 568, 576 (9th Cir.2012). We have held that a corrections department secretary and prison warden were proper defendants in a § 1983 case because “[a] plaintiff seeking injunctive relief against the State is not required to allege a named official’s personal involvement in the acts or omissions constituting the alleged constitutional violation. Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief.” Hartmann v. Cal. Dep’t of Corr. & Rehab., 707 F.3d 1114, 1127 (9th Cir.2013) (citations omit *1071 ted). Colwell contends that the NDOC Director would be responsible for implementing any injunctive relief and the defendants do not disagree.
CONCLUSION
We therefore REVERSE the district court’s grant of summary judgment in favor of the defendants and REMAND for further proceedings consistent with this opinion.[5]

. Colwell’s medical records filed under seal remain under seal except as to facts discussed herein.

. The record in this case does not explain the role or composition of the Utilization Review Panel, but we have previously explained that "[t]he URP is composed of six NDOC physicians who are board-certified in family medicine or other similar disciplines, and includes the NDOC Medical Director. The URP reviews requests for significant medical procedures by outside providers, such as surgery for an inmate.” Snow, 681 F.3d at 983.

. Several courts have reached conclusions consistent with Koehl. See Cobbs v. Pramstaller, 475 Fed.Appx. 575, 580 (6th Cir.2012) (unpublished) (cataract causing an inmate to struggle with depth perception and walk into objects was a serious medical need where delay in cataract-removal surgery necessitated a riskier procedure and resulted in complications); compare Garcia v. Nev. Bd. of Prison Commis., No. 3:06-CV-0118 JCM (VPC), 2008 WL 818981, at *17 (D.Nev. Mar. 24, 2008) ("[T]here is no question that losing sight in one eye constitutes a 'serious' medical need.”), with Canell v. Multnomah Cnty., 141 F.Supp.2d 1046, 1057 (D.Or.2001) ("While severe eye injuries or legal blindness may constitute a serious medical need, that is not the case with reading glasses.”). In a different context, the Supreme Court has indicated that monocular vision is likely to be a disability within the meaning of the Americans with Disabilities Act. Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566-67, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999) (explaining that "mo-nocularity inevitably leads to some loss of horizontal field of vision' and depth perception” and that "people with monocular vision 'ordinarily' will meet the Act's definition of disability”).

. The defendants want us to follow Layton, in which a Nevada district court found that there was no deliberate indifference based on facts and allegations very similar to those in the case. See 2012 WL 6969758, at *11. The report and recommendation in Layton relies in part on the district court's earlier grant of summary judgment in the instant case, see id. at *10, and the report and recommendations in both cases were prepared by the same magistrate judge. We find Layton’s deliberate indifference analysis unpersuasive for many of the same reasons detailed in this opinion, but we agree with its conclusion that a cataract can amount to a serious medical need. See id. at *6.

. We express no opinion regarding whether the defendants are entitled to qualified immunity on Colwell's claim for damages, leaving the district court to address that issue in the first instance. See Richardson v. Runnels, 594 F.3d 666, 672 (9th Cir.2010) ("Here, we do not reach qualified immunity because the issue has never been addressed by the district court.”); Schneider v. Cnty. of San Diego, 28 F.3d 89, 93 (9th Cir.1994) (“The district court granted summary judgment without reaching the immunity issues. These issues should be addressed in the first instance by the district court.”).