**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| WILL LOOMIS, an individual, *Plaintiff-Appellant*, v. JESSICA CORNISH, PKA Jessie J., an individual; UNIVERSAL MUSIC GROUP, INC., Delaware corporation Erroneously Sued As UMG Recordings, Inc.; UNIVERSAL REPUBLIC RECORDS, a division of UMG Recordings, Inc., *Defendants-Appellees*. | No. 13-57093 D.C. No. 2:12-cv-05525-RSWL-JEM OPINION |

Appeal from the United States District Court
for the Central District of California
Ronald S.W. Lew, District Judge, Presiding

Argued and Submitted March 8, 2016
Pasadena, California

Filed September 2, 2016

Before: Richard R. Clifton, and Sandra S. Ikuta, Circuit
Judges, and Frederic Block,* District Judge.

Opinion by Judge Clifton

---

* The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

## SUMMARY[**]

### Copyright

The panel affirmed the district court's summary judgment in favor of the defendants in a copyright infringement case.

Will Loomis, composer of the song "Bright Red Chords," alleged that the defendants stole a two-measure vocal melody and used it as the theme for the verse melody in their hit song "Domino." The panel held that Loomis did not put forth any potentially admissible evidence to establish that the Domino songwriters had access to Bright Red Chords, either on a chain-of-events theory or a widespread-dissemination theory. Accordingly, he failed to establish copyright infringement.

### COUNSEL

Michael Gross (argued), Michael Gross Law Office, St. Louis, Missouri, for Plaintiff-Appellant.

Jeffrey M. Movit (argued) and Christine Lepera, Mitchell Silberberg & Knupp LLP, New York, New York; Elaine K. Kim, Mitchell Silberberg & Knupp LLP, Los Angeles, California; for Defendants-Appellees.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

CLIFTON, Circuit Judge:

Plaintiff Will Loomis is the composer of a song called "Bright Red Chords." He brought this lawsuit alleging that Defendant Jessica Cornish (publicly known as Jessie J) and a team of high-profile songwriters led by Lukasz Gottwald (publicly known as Dr. Luke) stole a two-measure vocal melody from Bright Red Chords and used it as the theme for the verse melody in their hit song "Domino." The district court granted the Defendants' motion for summary judgment, concluding that Loomis did not put forth any potentially admissible evidence to establish that the Domino songwriters had access to Bright Red Chords. We affirm.

## I.  Background

Loomis composed and recorded Bright Red Chords with his band, Loomis and the Lust, in Santa Barbara, California, in 2008, and thereafter obtained a copyright registration for the song by depositing a copy with the U.S. Copyright Office. Loomis then released Bright Red Chords on a 2009 album, Nagasha, and a 2010 album, Space Camp. He also created a music video for the song.

Bright Red Chords was Nagasha's feature track and it garnered some attention in 2009 and 2010. For example, the Bright Red Chords video won the MTVU "Best Freshman" video award and was featured in Billboard Magazine. In addition, there was evidence presented that Bright Red Chords was distributed by Urban Outfitters as part of a corporate sampler CD and was played in a variety of name-brand clothing stores. MTV selected Loomis and the Lust as

one of its best new bands of 2010, and the band won an industry-sponsored "Artist on the Verge" award, which included a $25,000 prize.

Despite these achievements, Bright Red Chords was not commercially successful. Although the band hired a radio promotions company to promote the song on a variety of radio stations and a video promotions company to disseminate the music video through multiple media platforms, Bright Red Chords did not achieve an appreciable level of national saturation. Loomis was able to provide to the district court documentation of only 46 sales of the recording.

Domino was written in June of 2011 by a five-person songwriting team. Dr. Luke and his collaborator Henry Walter created the instrumental track that became the musical bed for the song. The melody and lyrics were added in a later session at Conway Studios in Los Angeles. Jessie J created the melody in collaboration with Dr. Luke and Claude Kelly. Karl Martin Sandberg (publicly known as Max Martin) also participated in this session, and he and Dr. Luke provided additional creative contributions to the song. Defendant Universal Republic Records released Domino, and it achieved substantial commercial success.

After hearing Domino, Loomis brought suit against Jessie J and her record label alleging copyright infringement. The district court granted summary judgment in favor of the Defendants. This appeal followed.

## II. Discussion

We review a grant of summary judgment de novo. *Mitchell v. Washington*, 818 F.3d 436, 441 (9th Cir. 2016). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether "there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* (quoting *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc)).

To establish copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991). Copyright ownership by Loomis is not in dispute in this case. The only issue is whether a reasonable jury could conclude that the Domino songwriters copied protectable elements of Bright Red Chords.

"Proof of copyright infringement is often highly circumstantial, particularly in cases involving music." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000). "Absent direct evidence of copying, proof of infringement involves fact-based showings that the defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'" *Id*. (quoting *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996)); *see also Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006). In this case there was no direct evidence of copying. The summary judgment entered by the district court relied entirely on the issue of access. Specifically, the district court concluded that Loomis failed to present sufficient

evidence to support a finding that Defendants had access to Loomis's work. Although Defendants also disputed the claim that the works were substantially similar, the district court's order did not address that issue.[1]

Proof of access requires "an opportunity to view or to copy plaintiff's work." *Sid and Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977), *superseded on other grounds by* 17 U.S.C. § 504(b). "To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009). "Where there is no direct evidence of access, circumstantial evidence can be used to prove access either by (1) establishing a chain of events linking the plaintiff's work and the defendant's access, or (2) showing that the plaintiff's work has been widely disseminated." *Id.*

Loomis relies on both theories to challenge the summary judgment. His chain of events theory is that multiple intermediaries could have provided a copy of Bright Red Chords to the Domino songwriters. His widespread dissemination theory is that Bright Red Chords had saturated the market in Santa Barbara so thoroughly that the presence of certain Domino songwriters at a recording studio in Santa Barbara during the period of saturation created a reasonable possibility of access. We take up each in turn.

---

[1] "Absent evidence of access, a 'striking similarity' between the works may give rise to a permissible inference of copying." *Baxter v. MCA., Inc.*, 812 F.2d 421, 423 (9th Cir. 1987). The district court noted that Loomis had not presented any evidence or argument regarding striking similarly, and Loomis has not advanced that theory on appeal.

*A.  Access Through Intermediaries*

"[E]vidence that a third party with whom both the plaintiff and defendant were dealing had possession of plaintiff's work is sufficient to establish access by the defendant." 4 Meville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.02[A] (2015); *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059, 1062 (9th Cir. 1981). "[T]he dealings between the plaintiff and the intermediary and between the intermediary and the alleged copier must involve some overlap in subject matter to permit an inference of access." *Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1358 (C.D. Cal. 1984); *id.* at 1355–58 (citing cases where the intermediary "either was a supervisor with responsibility for the defendant's project, was part of the same work unit as the copier, or contributed creative ideas or material to the defendant's work," *id.* at 1355–56). For example, in *Kamar*, we held that access was established by the fact that the defendant purchased stuffed animals from a manufacturer that had previously made stuffed animals for the plaintiff based on the plaintiff's copyrighted designs. 657 F.2d at 1060–62; *see also De Acosta v. Brown*, 146 F.2d 408, 410 (2d Cir. 1944) (sufficient evidence of access where plaintiff submitted her work to a literary agent who thereafter was consulted by the defendant for input on the infringing work).

By contrast, multiple courts have held that a plaintiff "cannot create a triable issue of access merely by showing 'bare corporate receipt' of her work by an individual who shares a common employer with the alleged copier." *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1056 (C.D. Cal. 2010); *see, e.g.*, *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 48 (2d Cir. 2003). "Rather, it must be

reasonably possible that the paths of the infringer and the infringed work crossed." *Towler v. Sayles*, 76 F.3d 579, 582–83 (4th Cir. 1996) (requiring a "close relationship" for the corporate receipt doctrine to apply); *see also Jones v. Blige*, 558 F.3d 485, 491–92 (6th Cir. 2009) (affirming summary judgment for the defendant where plaintiff submitted her work to a senior vice president at Universal because there was no evidence that the vice president had any contact with anyone involved in the creation of the allegedly infringing work).

Loomis identified several potential intermediaries through whom he alleged Defendants might have gotten access to his song.

Sunny Elle Lee worked for UMG Recordings as an Artists and Repertoire Representative. In May of 2010, Lee emailed Loomis's mother, Kristin Loomis, who acted as administrative coordinator for the band, to request a copy of Bright Red Chords. The band furnished Lee a copy of the song. Loomis argues that this chain of events created a triable issue of access because Lee's responsibility as an A&R representative was to "find" and "share" music. Loomis posits that because Lee was successful in her job and received a promotion, a reasonable juror could extrapolate that she provided Bright Red Chords to the Domino songwriters. He further argues that Lee's solicitation of Bright Red Chords makes this case distinguishable from the "bare corporate receipt" cases.

We disagree. On the record before us, there is no evidence of a nexus between Lee and the Domino songwriters that would be sufficient to raise a triable issue of access. *See Jorgensen*, 351 F.3d at 53 ("Bare corporate receipt . . . ,

without any allegation of a nexus between the recipients and the alleged infringers, is insufficient to raise a triable issue of access."). In fact, the evidence shows the opposite. Loomis did not dispute Defendants' statement that "[t]he five Domino Writers do not know, have never met, and have never received anything from Sunny Elle Lee." He also did not dispute that "Lee was not part of the work unit that created Domino." There was no evidence presented beyond mere speculation from Loomis himself to show that Lee had any role or input on any of Jessie J's music or recordings. Therefore, it is not "reasonably possible that the paths of the infringer and the infringed work crossed." *Towler*, 76 F.3d at 582.

Casey Hooper played lead guitar for Loomis and the Lust from September of 2009 to April of 2010. Hooper did not perform on the recording of Bright Red Chords, but he did perform the song live on MTV and at various shows. He left the band in April of 2010 to join Katy Perry's band.

Loomis argues that Hooper could have provided the Domino songwriters with access to Bright Red Chords in two ways. First, Loomis asserts that Hooper worked with Dr. Luke and Max Martin in early 2010 on a ten-day recording session for Katy Perry's album Teenage Dream. Loomis did not testify that he had personal knowledge of Hooper's involvement in the project. Rather, he claimed that Tucker Bodine, an owner of the studio and an assistant engineer on Teenage Dream, told him that Hooper was involved in the project.

Loomis's argument fails because he did not submit any potentially admissible evidence that would show that Hooper was involved in the Teenage Dream sessions. *See* Fed. R.

Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). The only evidence that Loomis provided was his hearsay report of alleged statements by Bodine. *See Kim v. United States*, 121 F.3d 1269, 1276–77 (9th Cir. 1997) ("Because the affidavit was not based on personal knowledge and because it relied on inadmissible hearsay testimony, the district court properly rejected it."). That is not enough to survive summary judgment.

Loomis's second argument is that a triable issue of access was established by evidence that Hooper was involved in Katy Perry's movie "Part of Me." Loomis testified that the packaging from the film shows that Hooper appeared as a cast member and that he received songwriting credits on two tracks. He further testified that Dr. Luke and Max Martin are listed as co-producers of the movie. This theory is deficient because there is no evidence detailing the responsibilities of Hooper, Dr. Luke, or Max Martin with respect to the film, let alone evidence that demonstrated that they actually worked together and were in personal contact.[2] Nothing in the record shows the requisite nexus between Hooper and the Domino songwriters except for Loomis's own speculation. "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Community College*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).

---

[2] We do not have the packaging from Part of Me in the appellate record, but the Internet Movie Database indicates that at least 59 individuals appeared in the movie, that at least 34 individuals received production credit, and that many others worked on the project. *See* http://www.imdb.com/title/tt2215719/fullcredits?ref_=tt_cl_sm#cast (last checked August 25, 2016).

Loomis also argues that Sean Walsh, Bonnie McKee, Sam Hollander, and Tucker Bodine could have served as conduits between Bright Red Chords and the Domino songwriters. But Loomis did not raise these arguments before the district court in his opposition to summary judgment, so they were waived. *See Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 546 n. 15 (9th Cir. 1991) ("It is well established that an appellate court will not reverse a district court on the basis of a theory that was not raised below."). Loomis conceded, in any event, that he did not have any admissible evidence to support these access theories.

## B.  *Widespread Dissemination*

A copyright plaintiff, alternatively, may establish a reasonable possibility of access by "showing that the plaintiff's work has been widely disseminated." *Art Attacks Ink*, 581 F.3d at 1143. "The evidence required to show widespread dissemination will vary from case to case." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 847 (9th Cir. 2012). In most cases, the evidence of widespread dissemination centers on the degree of a work's commercial success and on its distribution through radio, television, and other relevant mediums. *See, e.g.*, *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003); *Art Attacks Ink*, 581 F.3d at 1144–45; *Three Boys Music*, 212 F.3d at 483.

We have also recognized a doctrinal variant that focuses on saturation in a relevant market in which both the plaintiff and the defendant participate. In *L.A. Printex*, we held that a triable issue of access existed where (1) the plaintiff's fabric design had saturated the fabric market for apparel vendors in Los Angeles over a four-year period, and (2) the defendant routinely participated in the Los Angeles fabric market during

that period.  676 F.3d at 848.  This, we held, created "a 'reasonable possibility' that Defendants had an opportunity to view and copy L.A. Printex's design."  *Id.*; *see also Peel & Co., Inc. v. Rug Market*, 238 F.3d 391, 397 (5th Cir. 2001) (holding that plaintiff raised a triable issue of access as to whether its rug design "was widely disseminated among those involved in the United States rug trade").

Loomis submits that this case is similar.  He argues that Domino songwriters Dr. Luke and Max Martin were in Santa Barbara for the Teenage Dream sessions at a time when Santa Barbara was saturated with Bright Red Chords.  Loomis testified that the band was receiving "tons of airplay" on local radio stations at that time, and that Mix Magazine, Billboard, and the Santa Barbara Independent newspaper had carried stories about the band's achievements.  Loomis also testified that he had deposited promotional copies of Bright Red Chords at Playback Studios in the weeks leading up to the Teenage Dream sessions, and that the studio kept copies of Mix Magazine and the Santa Barbara Independent in the break room.

The fact that Dr. Luke and Max Martin spent ten days recording an album for a major national recording artist in Santa Barbara during a period when the local music scene was saturated with Bright Red Chords does not raise a triable issue of access.  Unlike the defendants in *L.A. Printex*, Dr. Luke and Max Martin were not participating in the relevant market – the Santa Barbara local music scene – during their brief stay in Santa Barbara.  Their production responsibilities had nothing to do with listening to local radio, reading local press, or scouting local bands, and there was no evidence that they undertook any other activity in that market that created a reasonable possibility of access to Bright Red Chords.

Although there was a bare possibility that they heard Bright Red Chords on the radio, or that they read about Loomis and the Lust in a magazine in the break room of Playback Studios, or that they picked up one of Loomis's promotional CDs while at Playback, that is not enough to raise a triable issue of access. *See, e.g.*, Nimmer, *supra* at § 13.02[A] (explaining that "evidence showing that Gloria Estefan was present in a room with 15,000 records, including one containing plaintiff's song" was insufficient to demonstrate access (discussing *Palmieri v. Estefan*, 35 U.S.P.Q.2d 1382, 1383 (S.D.N.Y. 1995))).[3]

## III.    Conclusion

Plaintiff's arguments in this case tell a story that, if adequately substantiated, might have survived summary judgment. The problem is that it was not supported by potentially admissible evidence. At bottom, the record consists primarily of Loomis's speculations of access unsupported by personal knowledge. The other evidence did not fill the breach. The district court did not err in granting summary judgment.

**AFFIRMED.**

---

[3] In his reply brief, Loomis argued that evidence of Bright Red Chords's dissemination in retail chains and evidence of its multi-media publicity campaign raised a triable issue of access. Loomis waived this argument by failing to make it in his opening brief. *See Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 998 (9th Cir. 2012). Even if it were otherwise, Loomis's argument is belied by the fact that he was only able to document 46 sales of Bright Red Chords. *See Rice*, 330 F.3d at 1178 (holding that because the plaintiff's video "only sold approximately 17,000 copies between 1986 and 1999," it could not be considered "widely disseminated" despite some evidence of national publicity).