NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LANCE GORDON OCAMPO, | No. 20-35990 |
| Plaintiff-Appellant, | D.C. No. 1:18-cv-00047-DCN |
| v. | MEMORANDUM* |
| CORIZON, LLC, a Missouri Corporation; et al., | |
| Defendants-Appellees. | |

Appeal from the United States District Court for the District of Idaho
David C. Nye, Chief District Judge, Presiding

Argued and Submitted October 7, 2021
Seattle, Washington

Before: PAEZ, M. SMITH, and NGUYEN, Circuit Judges.

Lance Gordan Ocampo ("Ocampo"), a former inmate of North Idaho

Correctional Institution ("NICI"), appeals the district court's grant of summary

judgment in favor of (1) Corizon, LLC ("Corizon"); (2) Corizon employees Diana

Collins, a nurse practitioner ("NP Collins"), Patti Schmitt, a licensed practical

nurse ("LPN Schmitt"), Keith Bolin, a licensed practical nurse ("LPN Bolin"), and

Jim Dunning, a correctional medical specialist ("CMS Dunning") (collectively

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

1

"individual Corizon Defendants"); and (3) Lieutenant Brian Crowl, an NICI correctional officer ("Lt. Crowl") (collectively "Defendants"). Ocampo alleged that Defendants were deliberately indifferent to his serious medical needs while incarcerated at NICI in violation of the Eighth Amendment and that they were negligent in their care and treatment of him. We have jurisdiction under 28 U.S.C. § 1291.

**1**. *Individual Corizon Defendants*. Ocampo argues that NP Collins, LPN Bolin, LPN Schmitt, and CMS Dunning were deliberately indifferent to his serious medical needs by failing to promptly contact more senior medical staff who could have properly diagnosed his condition or promptly request that he be transported to a hospital. We agree with the district court that the undisputed facts do not show that the individual Corizon Defendants were deliberately indifferent to Ocampo's serious medical condition.[1]

---

[1] Ocampo argues that, although the district court denied Corizon's motion to strike the expert report of nurse Cheryl Fabello ("RN Fabello"), the court erred by stating that it would give her testimony "very little weight." As Ocampo argues, a court may not weigh evidence when ruling on a summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Ocampo, however, did not rely on RN Fabello's report or testimony in opposing Corizon's motion for summary judgment, nor did the court discuss it when ruling on the motions for summary judgment. Under these circumstances, we fail to see any error. Ocampo also objects to the district court's exclusion of Dr. Ludwig's report. Because Dr. Ludwig was not disclosed until the expert rebuttal deadline, the district court properly treated him as a rebuttal witness and restricted his testimony under Federal Rules of Civil Procedure 26(a)(2)(D) and 37(c)(1).

"To prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This includes both an "objective standard," which requires the plaintiff to show a "serious medical need," and a "subjective standard," which requires a showing of "deliberate indifference." *Id.* The individual Corizon Defendants do not dispute that Ocampo experienced a serious medical need. Thus, only the subjective prong is at issue.

To establish deliberate indifference, a plaintiff must show that prison medical officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and that the defendants actually "dr[ew] that inference." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). A plaintiff can show deliberate indifference in a "harmful" delay of medical treatment. *Jett v. Penner,* 439 F.3d 1091, 1096–98 (9th Cir. 2006); *Toguchi v. Chung*, 391 F.3d 1051, 1060–61 (9th Cir. 2004) (concluding that defendant was not deliberately indifferent where there was no evidence of delay, and medical staff were "consistently responsive to [the prisoner's] medical needs"). Prison medical officials' "[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment

rights." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting *Estelle*, 429 U.S. at 104 ).

The record shows that the individual Corizon Defendants were consistently responsive to Ocampo's evolving medical condition, consulting with him at least seven times in a four-day period to monitor his conditionLPN Bolin examined Ocampo only once. He checked Ocampo's vitals and breathing and ensured that security officers checked on him throughout the night of May 2, 2016. LPN Schmitt examined Ocampo twice, on May 2 and May 3, 2016. During her first appointment with Ocampo, LPN Schmitt contacted Dr. Bradley Schaff, DDS, who prescribed additional antibiotics that LPN Schmitt administered to Ocampo. At the second appointment, LPN Schmitt ensured that Ocampo's vitals were normal and continued treating him with antibiotics. NP Collins evaluated Ocampo only over the phone, and after receiving a photograph of his condition, she promptly initiated a transfer to a hospital.

CMS Dunning similarly saw Ocampo twice, each time taking his vitals, assessing his pain, and referring him for further treatment. At Ocampo's second appointment, CMS Dunning either stated that Ocampo was going to need to "cowboy up" and eat food off his tray or "cowboy up" and wait for the antibiotics to take effect. Ocampo argues that CMS Dunning's comment shows that he was deliberately indifferent to his medical needs. Although Dunning's comment may

4

have been imprudent, the circumstances under which it was made do not show that he acted with deliberate indifference.[2]

None of the individual Corizon Defendants' interactions with Ocampo show that they were aware of a "substantial risk" to his health and consciously disregarded it. *Colwell*, 763 F.3d at 1066. As the undisputed facts show, the delay between the evaluations and the decision to transfer Ocampo to a hospital was relatively short and served the medical purpose of allowing Ocampo's prescribed antibiotics to take effect. The short delay in transferring Ocampo to a hospital is markedly different than those situations where we have held that delay in treatment constituted deliberate indifference. *See Jett*, 439 F.3d at 1096–98 (holding that an over two-month delay between diagnosis and treatment evinced deliberate indifference); *Snow v. McDaniel*, 681 F.3d 978, 984–87 (9th Cir. 2012) (holding that an over two-year delay from diagnosis to treatment showed deliberate indifference). At most, the individual Corizon Defendants misdiagnosed Ocampo's true medical condition, which cannot amount to deliberate indifference. *Lopez*, 203 F.3d at 1131.

---

[2] Ocampo also argues that the district court abused its discretion in excluding evidence of CMS Dunning's prior unprofessional conduct, disciplinary actions and termination under Federal Rules of Evidence 403 and 404. We conclude that the district court did not abuse its discretion in excluding this evidence, which was not directly relevant to CMS Dunning's state of mind while interacting with Ocampo. *Barranco v. 3D Sys. Corp.*, 952 F.3d 1122, 1127 (9th Cir. 2020).

5

The district court did not err in granting summary judgment on Ocampo's Eighth Amendment claim in favor of NP Collins, LPN Schmitt, LPN Bolin, and CMS Dunning.

**2**. *Defendant Corizon*. The claims against Corizon were premised on a theory of *Monell* liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). However, because none of the individual Corizon Defendants violated Ocampo's Eighth Amendment rights, there is no constitutional violation sufficiently established to constitute a *Monell* claim against Corizon. *See Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001).

Ocampo argues that he did not waive his state law claims against Corizon and the individual Corizon Defendants. We disagree. All Corizon Defendants moved for summary judgment on Ocampo's state law claims. Ocampo, however, failed to respond to their arguments and the district court granted the motion as to these claims. The district court did not err by treating Ocampo's state law claims as waived. *See Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016). We therefore do not address these claims.

**3**. *Defendant Lt. Crowl*. Ocampo argues that Lt. Crowl was deliberately indifferent by failing to contact medical providers or request medical transport after being informed of Ocampo's condition. Although Lt. Crowl disputed in the

6

district court whether he was informed of Ocampo's condition, the court did not resolve that issue and evaluated the claims against Lt. Crowl. Taking the evidence in the light most favorable to Ocampo as the non-moving party, we assume that Ocampo, through an unnamed officer, informed Lt. Crowl of his condition and that Lt. Crowl did not request that Ocampo be transferred to a hospital or contact Corizon medical staff. Nonetheless, Lt. Crowl's alleged single, telephonic interaction with Ocampo falls short of deliberate indifference and fails to establish an Eighth Amendment violation.

Ocampo also brought a negligence claim against Lt. Crowl under the Idaho Tort Claims Act ("ITCA"). Idaho Code § 6-904B. Given the institutional context of Ocampo's medical claim, the ITCA provides immunity for Lt. Crowl unless Ocampo can establish that he acted in a manner that was "gross[ly] negligen[t]" or "reckless, willful and wanton." Idaho Code § 6-904B(5) (providing immunity for "[a] governmental . . . employee[] while acting within the course and scope of their employment" including "any act or omission providing or failing to provide medical care to a prisoner or person in . . . [a] correctional facility"). For the same reasons discussed above, Ocampo fails to show that Lt. Crowl was reckless or grossly negligent under the ITCA.

Although we assume that Lt. Crowl was aware of Ocampo's condition and that Ocampo was in severe pain, Lt. Crowl's failure to request that Ocampo be

transferred to a hospital or to contact Corizon medical staff does not establish Lt. Crowl's liability under the ITCA. Indeed, under the ITCA, gross negligence is defined as "doing or failing to do an act which a reasonable person in a similar situation and of similar responsibility would, with a minimum of contemplation, be inescapably drawn to recognize his or her duty to do or not do such act and that failing that duty shows deliberate indifference to the harmful consequences to others." Idaho Code § 6-904C. Any difference between the deliberate indifference standards under the Eighth Amendment and under Idaho Code § 6-904C would be immaterial under these circumstances. Thus, the district court properly determined that Lt. Crowl was immune from suit as a governmental employee providing medical care to a prisoner in a correctional facility. Idaho Code § 6-904B(5). Ocampo has not presented sufficient evidence to raise a genuine factual dispute that Lt. Crowl was deliberately indifferent, reckless, or grossly negligent. Accordingly, the district court did not err in granting summary judgment in favor of Lt. Crowl on Ocampo's Eighth Amendment and state law claims.

**AFFIRMED.**