NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2180
_____

HENRY UNSELD WASHINGTON,
Appellant

v.

JONATHAN BARNHART, Medical Director at SCI Somerset; DR. ROBINSON, Doctor
at SCI Somerset; RICHARD IRWIN, Optometrist at SCI Somerset; MARK MAYLE,
Ophthalmologist for PA DOC; DR. HUTCHINSON, Doctor at SCI Somerset; J.
STRAMAT, Doctor at SCI Somerset; ANGELA JOHNSTON, Nurse Practitioner at SCI
Somerset; ROXANNE PLAYSO, Physician Assistant; BRIAN P. HYDE, Healthcare
Administrator at SCI Somerset; TESA ADELEKAN, PAC at SCI Somerset; B.
COSTEA, A Block Unit Manager at SCI Somerset; LT. CINKO, H Block Lieutenant at
SCI Somerset; J.R. MCDONNELL, A Block Officer at SCI Somerset; M.J. FOSTER, H
Block Officer at SCI Somerset; K. TURNER, RHU Lieutenant at SCI Somerset;
WILLIAM BOWERS; PHILLIP MAUST; HEIDI SROKA; ROBERT SNYDER; R.
PESCHOCK; J. GIRONE; ELLIS KAUFFMAN

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 3-17-cv-00070)
District Judge:  Honorable Kim R. Gibson

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 24, 2023
Before:  KRAUSE, PHIPPS, and SCIRICA, <u>Circuit Judges</u>

(Opinion filed: August 30, 2023)

_____

OPINION[*]

_____

PER CURIAM

Appellant Henry Washington appeals from the District Court's order granting summary judgment in favor of the defendants. We will affirm.

In 2017, Washington initiated a pro se civil rights action against prison officials and medical providers at State Correctional Institution at Somerset (SCI-Somerset). In his amended complaint, Washington alleged that the defendants had acted with deliberate indifference in treating his serious medical needs (especially his vision) and prevented him from freely exercising his religion by depriving him of access to his religious reading materials.[1] After discovery, the defendants filed a motion for summary judgment. On the Magistrate Judge's recommendation, the District Court granted that motion and entered judgment in favor of the defendants. Washington timely appealed.[2]

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Certain medical defendants also filed motions to dismiss. The District Court denied those motions in all respects except that it granted them as to Washington's claims alleging that the defendants had violated his religious rights. See ECF Nos. 112 & 183. In response to the motions to dismiss, Washington had clarified that he did not intend to assert his free-exercise claims against these defendants. We do not understand Washington to challenge these rulings on appeal, and in any event, the District Court did not err in accepting Washington's concession.

[2] We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a District Court's summary judgment order. See Blunt v. Lower Merion Sch. Dist., 767

The crux of Washington's medical-care claim contests the treatment of his longstanding vision issues. For context, Washington had been diagnosed with cataracts. In November 2014 and March 2016, ophthalmologists performed cataract surgeries on Washington's right and left eyes, respectively. And, in May 2016, Washington was fitted for eyeglasses. Over the next two months, Washington presented to sick call at SCI-Somerset complaining of blurred and deteriorating vision in his right eye, which presented the basis for this action.

To succeed on an Eighth Amendment claim, Washington must demonstrate that he suffers from a serious medical need and that the prison officials acted with deliberate indifference in treating that need. See Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017). We will assume that Washington's vision condition presented an objectively serious medical need. See Colwell v. Bannister, 763 F.3d 1060, 1067 (9th Cir. 2014) (a cataract causing complete blindness in one eye presents a serious medical need). Even so, and as the District Court concluded, Washington failed to adduce sufficient evidence to allow a reasonable juror to find that the medical providers acted with deliberate indifference in treating that need. See Pearson, 850 F.3d at 534.

The summer of 2016, Washington continued to report to sick call with vision issues in his right eye. Thereafter, the prison optometrist, Dr. Richard Irwin, conducted

F.3d 247, 265 (3d Cir. 2014). Summary judgment is warranted if defendants show "there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

3

four vision examinations for Washington over a fifteen-month timespan (from August 2016 through October 2017), and frequently recommended treating his vision issues with refraction (i.e., prescription eyeglasses). Washington refused to wear eyeglasses and instead seemed to request laser surgery treatment; however, his mere disagreement with the medical treatment is not enough to show deliberate indifference on the part of the medical defendants. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004). Moreover, where, as here, medical care was provided, courts "presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." Pearson, 850 F.3d at 535. To overcome that presumption, Washington could have pointed to extrinsic evidence or expert medical testimony to show that the treatment provided fell below a professional standard of care. Id. at 536. Washington did not do so. Indeed, he failed to point to any evidence demonstrating that the eyeglasses prescriptions and refraction recommendations offered by Dr. Irwin were so inadequate that the treatment amounted to "a substantial departure from accepted professional judgment." Id. at 539 (quotation marks omitted). Because there is no dispute of material fact on the deliberate indifference inquiry, summary judgment in favor of the defendants was proper.

Washington also argues that the medical staff acted with deliberate indifference in failing to diagnose him with (and treat him for) Whipple's disease. This claim lacks merit. Although, for years, Washington has self-reported that he suffers from Whipple's disease, his medical records indicated that a biopsy had been conducted and had ruled out

4

such a diagnosis.  Accordingly, Washington failed to establish that he suffered from an objectively serious medical need, and likewise failed to show that the medical providers acted with deliberate indifference in failing to diagnose him.

Next, Washington argues that prison officials violated his First Amendment rights and rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, et seq.  Washington adheres to a self-created religion that requires him to promote pan-Afrikanism by, among other things, reading four different Afro-centric books per day.  Pursuant to a 2008 Settlement Agreement, Washington is permitted to keep a total of nine book boxes, see Washington v. Klem, M.D. Pa. Civ. No. 3:01-CV-2432, ECF No. 172-2; because Washington had approximately fourteen boxes, prison officials asked him to reduce his reading materials to comport with that agreement. Although Washington believed that request violated his rights, Washington consented to the Settlement Agreement, is bound by its terms, and is entitled to no more than what is set forth in that agreement.  See Kaufman v. McCaughtry, 419 F.3d 678, 685 (7th Cir. 2005).

Relatedly, Washington contends that prison officials deprived him of his prison job officiating basketball games in retaliation for filing grievances and lawsuits against them.  Even assuming *arguendo* that Washington can establish a prima facie retaliation claim, see Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016); see also Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017) (noting that loss of a prison job can be sufficiently adverse to deter an inmate from exercising his constitutional rights), the

5

prison officials demonstrated that they had a legitimate and non-penological reason to remove Washington from his job assignment: Washington was unable to maintain high energy during games. That decision is amply supported by the record, particularly in light of Washington's various (and well-documented) health issues. See Watson, 834 F.3d at 426 (noting that courts assess "the quantum of evidence" in determining whether a prison official's disciplinary action was within the bounds of his or her discretion). There is no genuine issue of material fact that Washington's loss of his prison job was reasonably related to his health concerns, and that Washington would have lost that job irrespective of his grievance-filing activities. Id.

Finally, Washington argues that the prison officials treated him differently than similarly situated white inmates by denying him access to medical care, prohibiting him from accessing his religious materials, refusing to move him to a top-tier cell, and refusing to let him officiate basketball games. Other than his conclusory allegations about discriminatory treatment, Washington presented no facts from which a jury could find that he was treated differently than similarly situated white inmates. See Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009) (concluding that a bald allegation that the defendants' actions were motivated by discriminatory animus was not entitled to the presumption of truth); Nitkin v. Main Line Health, 67 F.4th 565, 571 (3d Cir. 2023) (explaining that, to withstand a motion for summary judgment, a plaintiff "must point to concrete evidence in the record that supports each . . . essential element of his case," cannot rest on bare or conclusory allegations and must, instead, "set forth specific facts establishing a triable

6

issue") (quotations omitted). Summary judgment in favor of the defendants on these claims was thus proper.

Accordingly, we will affirm the District Court's judgment.